Lieutenant General W. G. WYMAN, Commanding Officer of the Sixth Army, Presidio of San Francisco, California, Appellant,

v.

Russell Louis LA ROSE, Appellee.

No. 14517.

United States Court of Appeals Ninth Circuit.

June 16, 1955.

Rehearing Denied July 25, 1955.

Lloyd H. Burke, U. S. Atty., Richard Foster, Asst. U. S. Atty., San Francisco, Cal., for appellant.

J. H. Brill, San Francisco, Cal., for appellee.

Before MATHEWS and CHAMBERS, Circuit Judges, and BYRNE, District Judge.

MATHEWS, Circuit Judge.

Appellee, Russell Louis LaRose, a male citizen of the United States, was born on October 27, 1932, attained the age of 18 years on October 27, 1950, and was, on November 6, 1950, a resident of Milwaukee County, Wisconsin. On November 6, 1950, he registered with a local board of the Selective Service System, namely, Local Board No. 48 of Milwaukee County. On October 31, 1951, the local board mailed him a classification questionnaire (SSS Form No. 100), which he returned to the local board on or about November 13, 1951. He did not, in or by that questionnaire, indicate what classification he desired. He did, however, sign the statement in Series XIV of that questionnaire. That statement was as follows:

"By reason of religious training and belief I am conscientiously opposed to participation in war in any form and for this reason hereby request that the local board furnish me a Special Form for Conscientious Objector (SSS Form No. 150) which I am to complete and return to the local board for its consideration."

Accordingly, on or about November 16, 1951, the local board mailed appellee a conscientious objector form (SSS Form No. 150), which he returned to the local board on or about November 21, 1951. He did not sign either of the statements in Series I of that form,[1] nor did he, in or by that form, indicate what classification he desired. However, on January 22, 1952, the local board classified him I-A-O [2] and mailed him a notice of that classification (SSS Form No. 110). On February 5, 1952—14 days after mailing that notice—the local board received from appellee a letter dated February 1, 1952, reading as follows:

"I request an appeal of my classification. I received my notice of classification two days ago. It stated that I had been classified I-A-O. If you recall my Conscientious Objector application,[3] this is not the classification I desire, and not the classification I will be satisfied with.

"If you considered my C.O. application at its word, I do not see how this classification resulted. My objections are as sincere as possible, as those whom I recommended will, or have, testified.

"My views do not stem from a church or religious sect. I am a member of the Lutheran Church back home and this church is not registered as being opposed to going to war as we are. But I am a Christian. And if a Christian reads the life of Christ and accepts the fifth commandment, unqualified, he cannot help but refuse to kill for any reason whatsoever, self-defense or not.

"I have read the history of our nation, and find it a truly great history. And when I read what it was that inspired our nation's founders, 'the unalienable right to life'—iterated and reiterated throughout the growth of our national spirit, I too accept this freedom which has been held so close. Unalienable—that's what I consider the right to life, and whether North Korean soldier, kidnapper, rapist, murderer, or what, I believe their life, the most priceless, greatest possession one, all, can have, should not be taken away.

"And with this view how can I fill a noncombatant position?[4] What is the ethical difference between pulling a trigger to release a bullet or sending an order to buy one, between releasing another to fight or fighting yourself? I see none.

"Please carefully reconsider your classification. I can ask of you nothing more."

Thus, in effect, appellee requested the local board to reopen his classification

1. Series I was as follows:
"Series I.—Claim for Exemption.
"Instructions.—The registrant must sign his name to either statement A or statement B in this series but not to both of them. The registrant should strike out the statement in this series which he does not sign.
"(A) I am, by reason of my religious training and belief, conscientiously opposed to participation in war in any form. I, therefore, claim exemption from combatant training and service in the Armed Forces.
. . . . . . . . . . . . . . . . . . . . . . . .
(Signature of registrant)
"(B) I am, by reason of my religious training and belief, conscientiously opposed to participation in war in any form

and I am further conscientiously opposed to participation in noncombatant training and service in the Armed Forces. I, therefore, claim exemption from both combatant and noncombatant training and service in the Armed Forces.
. . . . . . . . . . . . . . . . . . . . . . . .
(Signature of registrant)"

2. Which is to say, it classified him as a conscientious objector available for noncombatant military service only. See 32 C.F.R. § 1622.11.

3. Meaning, we suppose, his conscientious objector form (SSS Form No. 150).

4. Appellee had not previously indicated to the local board that he was opposed to participation in noncombatant training and service in the Armed Forces.

and consider it anew.[5] The local board did so and, on July 23, 1952, classified him II–S[6] and mailed him a notice of that classification (SSS Form No. 110). That classification was based on representations made to the local board by W. G. Greenman, director of Deep Springs College,[7] and by Robert D. Howard, dean of that college, to the effect that appellee was a full-time student at that college.[8] However, on September 13, 1952, Greenman wrote the local board a letter stating that appellee was no longer enrolled as a student at that college. Accordingly, the local board, on its own motion, reopened appellee's classification, considered it anew and, on September 23, 1952, classified him I–A–O and mailed him a notice of that classification (SSS Form No. 110). On January 12, 1953, the local board ordered him to report for induction. He did so report and, on February 13, 1953, was inducted as a conscientious objector available for noncombatant military service only. Thereafter he deserted, was apprehended and, while awaiting trial by court-martial, was detained in the custody of appellant, Lieutenant General W. G. Wyman, commanding officer of the Sixth Army at the Presidio of San Francisco, California.

While so detained, appellee, on April 21, 1954, filed in the United States District Court for the Northern District of California a petition for a writ of habeas corpus. Upon the filing of the petition, the District Court issued an order directing appellant to show cause on May 4, 1954, why a writ of habeas corpus should not be issued as prayed for.[9] The order to show cause was served on appellant on April 26, 1954, but he did not, nor did anyone for him, make any return or answer thereto.[10] However, on May 7, 1954, hearings were had at which appellant was represented by counsel. Appellee was permitted to, and did, in person and by counsel, attend, participate in, and adduce evidence at the hearings. His evidence consisted of his Selective Service file and his own testimony. On June 18, 1954, the District Court made and entered the following order:

"This matter having been heard, briefed and submitted for ruling,

"The Court finds that petitioner [appellee] submitted a letter to his draft board[11] after it had classified him I–A–O, and that such letter constituted an appeal, thus depriving the local board of jurisdiction over petitioner; that no hearing was ever accorded petitioner on appeal, nor was any appeal granted, all of which constituted a denial of due process of law (Knox v. United States, [9 Cir.], 200 F.2d 398).

"The Court further finds that even though petitioner's letter be construed as a request for reconsideration by his draft board, no hearing was ever accorded him pursuant to such request with respect to his basic classification of I–A–O (as distinguished from a temporary deferment of II–S granted at the behest of petitioner's school head), thus denying him due process of law.

"There is credible evidence that petitioner was wantonly beaten while confined at the Presidio in San Francisco. However, such treatment forms no part of the Court's consideration of this petition.

5. See 32 C.F.R. §§ 1625.1–1625.4, 1625.11–1625.14.

6. Which is to say, it classified him as a registrant deferred because of activity in study. See 32 C.F.R. § 1622.25.

7. A junior college at Deep Springs, California.

8. Such representations were made by Greenman in letters to the local board dated January 26, 1952 and June 17, 1952, and in a college student certificate (SSS Form No. 109) dated June 17, 1952, and by Howard in a college student certificate (SSS Form No. 109) dated March 20, 1952, and in a letter to the local board dated March 21, 1952.

9. See 28 U.S.C.A. § 2243.

10. See 28 U.S.C.A. §§ 2243 and 2248.

11. In this order, the local board was called a draft board.

"The petitioner may have his relief as prayed, upon preparation of findings of fact and conclusions of law.[12]

"It is ordered that the petition for writ of habeas corpus be, and the same hereby is, granted."

Although, as indicated above, the petition for a writ of habeas corpus was granted by the order of June 18, 1954, no writ of habeas corpus was ever issued in this case. However, on June 23, 1954, the District Court made and entered the following order:

"To Lieutenant General W. G. Wyman, or any other commanding officer of the Sixth Army, Presidio, San Francisco, California:

"It appearing on the return of the writ of habeas corpus allowed by this Court[13] that Russell Louis LaRose was illegally inducted into the Army of the United States and is illegally detained by you as a member thereof,

"You are therefore hereby commanded forthwith to discharge him from your custody or control as a member of the Army of the United States."

On June 24, 1954, the District Court made and entered an order similar to the order of June 23, 1954, except that the word "release," instead of "discharge," was used in the order of June 24, 1954. This appeal was taken on August 11, 1954.

The petition alleged that appellee's I–A–O classification of January 22, 1952, was "without basis in fact." However, the District Court did not so find, nor did the evidence warrant such a finding. Instead, the evidence showed that appellee's I–A–O classification of January 22, 1952, was based on his own statement in Series XIV of his questionnaire (SSS Form 100).[14]

The petition alleged, in substance, that appellee filed with the local board on February 1, 1952, a notice of appeal from his I–A–O classification of January 22, 1952; that the local board failed to transmit his Selective Service file to the appeal board; and that consequently his appeal was never considered. However, the District Court did not find that appellee filed a notice of appeal on February 1, 1952, nor did the evidence warrant such a finding. Instead, the evidence showed that no notice of appeal was filed by appellee on February 1, 1952, or at any other time.[15]

As indicated above, the District Court found that appellee "submitted a letter to [the local board] after it had classified him I–A–O," and that "such letter constituted an appeal,[16] thus depriving the local board of jurisdiction over [appellee]." The evidence showed that appellee submitted four letters to the local board after his I–A–O classification of January 22, 1952—the letter dated February 1, 1952, and three others—but none of the four letters constituted an appeal or a notice of appeal.

It is true that the word "appeal" was used in the letter dated February 1, 1952, but the context clearly showed that appellee was not thereby taking an appeal, but was, in effect, requesting the local board to reopen his classification and consider it anew,[17] which the local board did. Furthermore, the letter dated February 1, 1952, was not received by or filed with the local board until February 5, 1952—four days after the expiration of the time for appealing from

---

12. So far as the record shows, no such findings or conclusions were ever prepared. If prepared, they were never filed.

13. No such writ having been issued, there was, of course, no such return.

14. This appeared from appellee's Selective Service file, put in evidence by appellee himself.

15. Such a notice, if filed, should have been, and presumably would have been, placed in appellee's Selective Service file. However, that file contained no such notice.

16. Meaning, we suppose, that it constituted a notice of appeal. See 32 C.F.R. § 1626.11.

17. Cf. United States v. Vincelli, 2 Cir., 215 F.2d 210.

appellee's I-A-O classification of January 22, 1952.[18]

As indicated above, the District Court found that "even though [appellee's] letter be construed as a request for reconsideration by [the local board], no hearing was ever accorded him pursuant to such request," meaning, we suppose, no hearing attended by appellee in person. No such hearing was requested by appellee,[19] nor was he in any way prejudiced by the failure to accord him such a hearing. The reconsideration requested and obtained by him resulted in his being put in a lower class (II-S instead of I-A-O), thus benefiting instead of prejudicing him.

█ It should be noted that the local board's order of January 12, 1953—the order requiring appellee to report for induction—was not based on and did not result from his I-A-O classification of January 22, 1952, but was based on and resulted from his I-A-O classification of September 23, 1952—a classification not mentioned or referred to in the petition or in any of the District Court's orders. Appellee did not appeal from his I-A-O classification of September 23, 1952, nor did he, on September 23, 1952, or at any time thereafter, request the local board to reopen his classification or to consider it anew. In short, he failed to exhaust his administrative remedies and hence was not entitled to seek relief in the District Court.[20]

We conclude that, in granting the petition and in ordering appellee discharged and released from appellant's custody, the District Court erred.

Accordingly, the orders of June 18, 1954, June 23, 1954, and June 24, 1954, are reversed, and the case is remanded to the District Court, with directions to enter an order discharging the order to show cause and remanding appellee to the custody of appellant or any other commanding officer of the Sixth Army.

18. See 32 C.F.R. § 1625.2.

19. See 32 C.F.R. §§ 1624.2 and 1625.13.

20. Williams v. United States, 9 Cir., 203 F.2d 85; Skinner v. United States, 9 Cir., 215 F.2d 767; Mason v. United States, 9 Cir., 218 F.2d 375.