370 F.2d 388
 Joseph Carl PARROTT, Appellant,
v.
UNITED STATES of America, Appellee.
Robert Alan LAWRENCE, Appellant,
v.
UNITED STATES of America, Appellee.
Terry Allan WOLFE, Appellant,
v.
UNITED STATES of America, Appellee.
Leonard Ralph WALKER, II, Appellant,
v.
UNITED STATES of America, Appellee.
 Nos. 20730, 20746, 20927, 20926.
 United States Court of Appeals Ninth Circuit.
 Dec. 16, 1966.
 
 J. B. Tietz, Michael Hannon, Los Angeles, Cal., for appellants.
 Manuel L. Real, U.S. Atty., Gabriel Guttierrez, John K. Van de Kamp, Robert L. Brosio, Warren P. Reese, Burt S. Pines, Donald C. Smaltz, Asst. U.S. Atty., Los Angeles, Cal., for appellee.
 Before BARNES and KOELSCH, Circuit Judges, and THOMPSON, District judge.
 BARNES, Circuit Judge:
 
 
 1
 This is a consolidated appeal from four convictions (two by juries and two by judges) of the four appellants herein charged with violations of the Universal Military Training and Service Act, 50 App.U.S.C. 462.
 
 
 2
 Jurisdiction below rested on that statute, and 18 U.S.C. 3231. Jurisdiction exists here pursuant to 28 U.S.C. 1291.
 
 
 3
 Parrott was charged with failure to perform civilian work; Lawrence and Wolfe with refusal to submit to induction; and Walker (in two counts) with failing to report for induction, and failing to notify his local draft board where mail could reach him. Walker received two concurrent three-year sentences; each of the others one three-year sentence.
 
 
 4
 Each appellant professed conscientious objections to war. Parrott was so classified, but subsequently refused to do civilian work required of conscientious objectors.
 
 
 5
 Two principal questions are raised-- error in admission of evidence, and the failure to grant motions for acquittal. The common evidentiary question existing in all four appeals is the claim the court erred in admitting the Selective Service System file (Exhibit 1) into evidence. We consider it first.
 
 
 6
 I. The admission of certified copies of the appellants' files.
 
 
 7
 The government introduced these files (three being photo copies and one an original) each with a certificate attached. No objection is made to the form or contents of any authenticating certificate, save that it 'is a thin paper sheet.' No case is submitted by appellants as authority for the objection urged. Appellants suggest that if several persons have at various times been temporary lawful custodians of the file, the certificate of but one such person that it is in his custody is valueless. Again no law is cited.
 
 
 8
 The point is completely without merit. (Cf. Rule 27, Federal Rules of Criminal Procedure; and Rule 44(a), Federal Rules of Civil Procedure.) Both this circuit and others have authorized the introduction into evidence of duly authenticated copies of the registrant's Selective Service files. La Porte v. United States, 300 F.2d 878 (9th Cir. 1962); Yaich v. United States, 283 F.2d 613 (9th Cir. 1960); Kariakin v. United States, 261 F.2d 263 (9th Cir. 1958); Olender v. United States, 210 F.2d 795 (9th Cir. 1954); United States v. Borisuk, 206 F.2d 338 (3d Cir. 1953). Cf. Wong Wing Foo v. McGrath, 196 F.2d 120, 123 (9th Cir. 1952).
 
 
 9
 II. Were the classifications improper?
 
 A. The scope of review
 
 10
 The only basis for granting the motions for acquittal would have been the improper classifications of the appellants. Before considering the facts of the cases, however, we must contend with the appellant's assertions as to the standards of judicial review of Selective Service classifications.
 
 
 11
 1. Appellants first urge generally that the lower courts failed to properly interpret Dickinson v. United States, 346 U.S. 389, 74 S.Ct. 152, 98 L.Ed. 132 (1953). They state 'that the board, '* * * must find and record affirmative evidence that he (the registrant) has misrepresented his case * * *' * * *.' (Appellants' Opening Brief, p. 12). This is a misquotation. The Dickinson majority opinion states: 'The task of the courts in cases such as this is to search the record for some affirmative evidence to support the local board's overt or implicit finding that a registrant has not painted a complete or accurate picture of his activities.' 346 U.S. at 396, 74 S.Ct. at 157.
 
 
 12
 Mr. Justice Clark then goes on to point out for the majority:
 
 
 13
 'Local boards are not courts of law and are not bound by traditional rules of evidence; they are given great leeway in hearing and considering a variety of material as evidence. If the facts are disputed the board bears the ultimate responsibility for resolving the conflict-- the courts will not interfere. Nor will the courts apply a test of 'substantial evidence.' However, the courts may properly insist that there by some proof that is incompatible with the registrant's proof of exemption.' Id. at 396, 74 S.Ct. at 157.
 
 
 14
 The dissenting opinion interprets the majority opinion as requiring that which appellants rely upon, that 'the board must find and record affirmative evidence that he (the registrant) has misrepresented his case.' The minority then points out there is nothing in the Act which requires this.
 
 
 15
 We prefer to follow the precise language of the majority opinion-- was there in the record a basis in fact for denying Dickinson's claimed ministerial exemption? And since the ministerial exemption is a matter of legislative grace, 'the selective service registrant bears the burden of clearly establishing a right to the exemption.' Id. at 395, 74 S.Ct. at 157. And since in Dickinson all evidence before the board established the exemption, the registrant had met the statutory criteria, and the board could not, without any contrary evidence, simply say it disbelieved him, 'even in the absence of any impeaching or contradictory evidence.' Id. at 396, 74 S.Ct. at 157.
 
 
 16
 2. Appellants next urge generally that the courts below, save as to the Parrott case, 'ignore the doctrine of Witmer v. United States, (348 U.S. 375,) 75 S.Ct. 392 (99 L.Ed. 428) (1955), wherein the yardstick of sincerity is made decisive.' (Appellants' Opening Brief, p. 12.) Witmer v. United States, supra, points out that while the ultimate question in conscientious objector cases is the sincerity of the registrant in objecting, on religious grounds, to participation in war in any form (348 U.S. at 381-382, 75 S.Ct. 392), inconsistent statements of the registrant are sufficient to cast doubt on his claim. In that case the Court could not find, following Dickinson, supra, that there was no basis in fact for the appeals board's decision in denying Witmer a classification as a conscientious objector. We assume that inconsistent actions, as well as statements, are valid proof of a 'basis in fact' for the denial of the requested exemption.
 
 
 17
 We hold the classifications were proper.
 
 
 18
 In summary, we agree generally with the government's position that under the Act and the Supreme Court's cases interpreting it, a court may not interfere with a registrant's classification unless it finds that there is no basis in fact for the classification, or that the local board acted so arbitrarily and capriciously that the registrant was denied due process. Dickinson v. United States, supra; Witmer v. United States, supra; Estep v. United States, 327 U.S. 114, 122, 66 S.Ct. 423, 90 L.Ed. 567 (1946); Rogers v. United States, 263 F.2d 283, 285 (9th Cir. 1959); and Badger v. United States, 322 F.2d 902, 907 (9th Cir. 1963).
 
 B. Parrott
 
 19
 In Parrott's case, the burden on him was not met by him-- he did not prove he was more than a part-time or half-time or occasional or irregular minister-- he did not prove the ministry was his 'vocation'. No case is presented to us where such a meager ministry requires a finding it is registrant's vocation. Dickinson, supra, 346 at 395, 74 S.Ct. 152.
 
 
 20
 The judgment of conviction as to Parrott is affirmed.
 
 C. Wolfe, Lawrence and Walker
 
 21
 In the cases of Wolfe, Lawrence and Walker, each upon registration did not originally claim to be a conscientious objector.
 
 
 22
 Wolfe registered on May 23, 1960. His classification questionnaire, filed July 2, 1962, made no claim he was a conscientious objector. On May 14, 1964, a new questionnaire made no such claim. On June 18, 1963, Wolfe was classified I-A, and was so notified. On January 16, 1964, Wolfe obtained a II-S, or student classification, and notice was mailed to him of that classification. On November 16, 1964, he was reclassified II-S, and a notice mailed to him. On January 6, 1965, Wolfe Graduated from college and requested a continued II-S classification so he could go to Mexico City to study Spanish. On February 11, 1965, he was classified I-A, and on March 2, 1965, so notified. He made no request for a personal appearance before the board.
 
 
 23
 On March 15, 1965, the board received a 'Current Information Questionnaire' from Wolfe, and no claim of being a conscientious objector was made. He stated he was aware of his eligibility for the draft, but asked a further postponement to complete his education.
 
 
 24
 On April 1, 1965, the board mailed an order to appellant to report for a physical examination (SSS Form No. 223). Appellant did not file an appeal from his I-A classification within the period provided by the Selective Service regulations. 32 C.F.R. 1626.2(c)(1) and (3) (1962). On April 27, 1965, the board mailed a second order to appellant to report for his physical examination, having been informed by appellant that he had not received word of the first order to report for physical examination until April 11, 1965.
 
 
 25
 On May 5, 1965, the board received from appellant a written request for an interview for the purpose of appealing his IA classification. The basis for his request was not that he was a conscientious objector, but that he wished to return to college to complete the courses necessary for him to obtain a teaching credential. On May 5, 1965, the board noticed that the appellant had requested an interview and appeal but was late in filing the appeal.
 
 
 26
 On May 25, 1965, a statement of appellant's acceptability for induction into the armed services (DD Form 62) was mailed to appellant. On June 30, 1965, the board mailed appellant an order to report for induction (SSS Form No. 252) (on July 27, 1965). On July 6, 1965, the board received a letter from appellant in which he stated that he wished to notify the board that, 'Because of my religious and moral convictions, I cannot have on my conscience the fact that I have trained myself for the killing of human life. * * * I am, therefore, this 3rd day of July applying for classification as a conscientious objector.'
 
 
 27
 On July 12, 1965, the board sent appellant 'Special Form for Conscientious Objector' (SSS Form No. 150), which the board received in a completed form from appellant on July 14, 1965. On July 26, 1965, the appellant completed a second SSS Form No. 150 in the office of the board. On July 26, 1965, the board mailed appellant a 'Postponement of Induction' (SSS Form No. 264), postponing his induction until further notice. The board postponed appellant's induction to consider his SSS Form No. 150 which he had submitted as the special form for a conscientious objector.
 
 
 28
 On August 4, 1965, appellant was present at the board's request at a meeting of the board regarding his claim as a conscientious objector. Appellant advised the board '* * * that he had planned to be married in May or June but that it did not work out so he filed a claim as a conscientious objector. He stated the reason he had never claimed it before was not because he was ashamed but because he was afraid that people would laugh at him and criticize him * * *.' On August 4, 1965, the board decided that the '* * * SSS Form No. 150 and the results of the interview did not warrant reopening of the classification.' On August 6, 1965, the board mailed a letter to the sppellant advising him that the facts presented by appellant did not warrant reopening or reclassification of his case at that time (Form C-140).
 
 
 29
 On August 9, 1965, the board received a letter from appellant wherein he stated that he continued to consider himself a conscientious objector and '* * * If I am given an induction notice I will report, but I will declare myself a conscientious objector to the army.'
 
 
 30
 On August 10, 1965, the California headquarters of the Selective Service System advised the board by letter that it had reviewed appellant's Selective Service file, and that the postponement of his scheduled induction should be withdrawn and a new reporting date should be established allowing appellant ten days within which to report.
 
 
 31
 On August 11, 1962, the board received a letter from appellant stating that he was requesting an appeal from the board's decision not to reclassify him. On August 12, 1965, the board mailed a letter to appellant notifying him that the postponement of his induction was terminated, and that the local board had made no change in his classification status after carefully reviewing his SSS Form No. 150 and the August 4, 1965, interview. Appellant was further advised that his order to report for induction remained in effect, and he was directed to report for induction on August 24, 1965, at 6:30 A.M., to 2100 North Main Street, Santa Ana, California.
 
 
 32
 On August 24, 1965, appellant reported for induction and on the same date refused to be inducted. After appellant was informed of the criminal penalties involved for a refusal, he was again asked to submit to induction but he refused to be inducted. He gave as his reason that he did not, nor had he ever, believed in military service of any kind. He stated that he did not believe in violence, that he could not conscientiously be a part of the armed services, that he was prepared to go to trial for the defense of his position, and that he could not cooperate in armed training. He said he would 'agree to perform an alternative service in accordance with his church.'At the time Wolfe was ordered to report for induction on June 30, 1965, he was properly classified in class I-A, 'Available for military service'.
 
 
 33
 Title 32, Code of Federal Regulations 1625.2 provides in part:
 
 
 34
 'The local board may reopen and consider anew the classification of a registrant * * * provided, * * * the classification of a registrant shall not be reopened after the local board has mailed to such registrant an Order to Report for Induction * * * unless the local board first specifically finds there has been a change in the registrant's status resulting from circumstances over which the registrant had no control.'
 
 
 35
 Here, in order to intelligently find if there has been a status change, due to uncontrollable factors, the local board received the registrant's claims, postponed his induction, gave Wolfe a hearing, and determined no change in his classification was warranted. To have refused any hearing would have been contrary to United States v. Majher, 250 F.Supp. 106 (S.D.W.Va.1966), upon which appellant relies.
 
 
 36
 Appellant's brief assumes that it was discretionary for a local board to reopen, but states what was here done was 'in the best light, * * * an abuse of discretion.' To prove it, we are referred to two unreported trial judges' opinions which found an abuse of discretion on the facts existing in those cases.
 
 
 37
 We find no such abuse of discretion on the facts here present. 32 C.F.R. 1625.2, 1625.4, 1641.2(b) (1962). Wolfe received more than the law required of the local board. We can find no arbitrary or capricious action of the board by which the registrant was denied due process.
 
 
 38
 Wolfe made no effort whatseever to claim he was a conscientious objector prior to receiving his notice to appear for induction. The board was required to act on the information then before it. Title 32, Code of Federal Regulations 1625.2, supra, would not be necessary, nor be of any legal significance or effect, could 'noncontrollable' shifts of opinion or conscience by the registrant be sufficient to require a reconsideration or a re-examination of the earlier nonappealed and reasonable classification. Wyman v. La Rose, 223 F.2d 849 (9th Cir. 1955).
 
 
 39
 As the Tenth Circuit said in Keene v. United States, 266 F.2d 378, 383-384 (1959).
 
 
 40
 'It does not seem unreasonable or derogatory to the spirit and purpose of the exempting statute to provide by regulation that no request for reopening and reclassification shall be entertained after notice to report for induction is mailed. Otherwise, the whole machinery of the selective service process may conceivably be disrupted by last minute changes in status for purposes of avoidance. Such is the manifest purpose of the proviso in Regulation 1625.2. We think the regulations have application to a conscientious objector's claim as all other claims for a change in status. It seems also entirely consistent with the procedural safeguards provided in the selective service process to say that the circumstances relied on to show a change in status must have occurred after the induction notice was mailed.'
 
 
 41
 We agree with the government that even if the trial court should consider the refusal of the local board to reopen the classification, there was no violation of due process, on the facts before the board. As the government points out:
 
 
 42
 'Serious question as to the appellant's sincerity is raised by the inconsistencies of his statements and position. The fact that he made no effort to establish his claim until after he was ordered to report for induction suggests that he resorted to the expedient of filing a conscientious objector claim to evade military service and criminal penalty. This possibility is indicated by appellant's statement to his local board that he had planned to be married in May or June, that it did not work out, and so he filed a conscientious objector claim.
 
 
 43
 'There is sufficient evidence in appellant's claim to form a basis for the inference that appellant's beliefs were actually rationalized, litellectual in their origin, and moral in their fundamental significance. Religious training and belief, in the context of conscientious objection entitling a registrant to exemption from military service, excludes essentially political, sociological, or philosophical views or a merely personal moral code. Title 50, Appendix, United States Code, Section 462.
 
 
 44
 'Taking all of these factors into consideration, it is apparent that the local board had a basis in fact for its opinion that the facts presented did not warrant reopening or reclassification.' (Appellee's Brief (on Wolfe), pp. 22-23.)
 
 
 45
 While the facts as to Lawrence and Walker differ in some details, the same principles apply to them as to the facts in the Wolfe case. To specify them in detail would unduly prolong this opinion.
 
 D. Wolfe
 
 46
 Appellant Wolfe alleges as a separate ground of error that 'he was not given the mandatory warning that refusal to submit to induction was a felony carrying a penalty of five years imprisonment and/or a $10,000 fine.' (Appellant's Brief, p. 19.) This position is then modified-- so that appellant does not assert he was not warned of the precise terms of the penalty, but that he was not warned between the two 'opportunities' given by the inducting officer.
 
 
 47
 Appellant relies on the unreported decision of Judge Jertberg of this court (in United States v. Lindsay, S.D.Calif., 1958, No. 3496-ND). There the court said the warning was insufficient because: 'It omits to state that the defendant was informed that the punishment might be by imprisonment for not more than 5 years or a fine of not more than $10,000 or both.' The defendant there was informed by letter only that the refusal to be inducted 'was a felony * * * and that conviction would subject him to punichment.' The nature and severity of the punishment is an essential element of the warning. This is established in Chernekoff v. United States, 219 F.2d 721 (9th Cir. 1955).
 
 
 48
 After his first refusal to be inducted (R.T. 43) i.e., refusal to sign the papers, he was taken upstairs and 'informed of penalties.'
 
 
 49
 'THE COURT: You were informed of penalties?
 
 
 50
 'THE WITNESS: Yes.
 
 
 51
 'THE COURT: What penalties did they tell you?
 
 
 52
 'THE WITNESS: Five years and/or $10,000.' (R.T. p. 44, lines 5-8.)
 
 
 53
 He was then asked to take the symbolical step forward, and refused. (R.T. p. 46, lines 5-17.)
 
 
 54
 We can find no lack of adequate warning as to the precise penalty faced by Wolfe; and we conclude he had not only warning, but full knowledge of the precise penalty.
 
 
 55
 We fail to perceive the applicability to this case of the holding in Corrigan v. Secretary of Army, 211 F.2d 293 (9th Cir. 1954).
 
 
 56
 We find no error in Wolfe's separate specification of error, or in his conviction.
 
 E. Lawrence
 
 57
 Appellant Lawrence has a separate point in his appeal-- that he was illegally denied the statutory I-S classification (deferment to end of year of student satisfactorily pursuing a full-time course of instruction).
 
 
 58
 The record before us shows that the board granted a postponement of induction to Lawrence, classified I-A, on May 20, 1965, to the June 1965 induction call date, believing this was the equivalent of a I-S classification. Appellant urges that it was not the equivalent, because if he had been placed in I-S instead of I-A his notice of induction would have been cancelled, and then, upon finishing his schooling, he could have had the opportunity to appeal the presumed I-A status he would subsequently have attained.
 
 
 59
 But appellant fails to mention that he had notified the local board, on receipt of its first induction notice sent on April 26, 1965, that he would not comply with that order. Nor did Lawrence ever seek a classification as I-S, nor submit any evidence he was a full time student at any college or university. He was a part time student at the University of Southern California, and had not yet enrolled at San Francisco State College.
 
 
 60
 Furthermore, he testified his religious views never 'crystalized' until sometime in June, after his request for a postponement on the ground he wanted from the board, not a total exemption, but merely a stay to the end of the college year.
 
 
 61
 When his religious ideas might have 'crystalized' is a matter of doubt and pure speculation. He was denied nothing to which he was entitled.
 
 
 62
 Upon oral argument appellant's counsel called to our attention the recent Second Circuit case of United States v. Gearey, 368 F.2d 144 (2d Cir. Oct. 21, 1966). Stated simply, we do not agree with the appellant's interpretation of the holding or the rationale of the Second Circuit. We do not approve of the 'crystalizing' theory, unless that crystalization was the only evidence before the board. Were it to be followed blindly, there could be no workable Selective Service System. Why 'the realization he may soon be called upon to kill may be the catalyst necessary to crystalize a draft registrant's once vague feelings to a clear-cut conscientious objection to war' (United States v. Gearey, supra) places, in our opinion, too much emphasis and reliance upon the time element. An average man of average intelligence, who can read, must daily realize that he may, once he is subject to a draft call from his board due to his designated classification, be 'soon' called upon to kill.
 
 
 63
 The conviction of lawrence is affirmed.
 
 III. Conclusion
 
 64
 In summary, we quote from a district court judge's resume of his duties in conscientious objector cases:
 
 
 65
 'Our judicial review of these administrative proceedings leading to defendant's classification is very limited. Blalock v. United States, 247 F.2d 615 (4th Cir. 1957). The range of review is the narrowest known to the law. Campbell v. United States, 221 F.2d 454 (4th Cir. 1955). The only issues before the Court in his type of case are whether there is shown a denial of basic procedural fairness or whether the condlusion of the board is unsupported by any basis in fact. Witmer v. United States, 348 U.S. 375, 75 S.Ct. 392, 99 L.Ed. 428 (1955); Dickinson v. United States, 346 U.S. 389, 74 S.Ct. 152, 98 L.Ed. 132 (1953); Goff v. United States, 135 F.2d 610 (4th Cir. 1943).' United States v. Majher, 250 F.Supp. 106, 109 (S.D.W.Va.1966).
 
 
 66
 Our review of the cases here presented convince us there was no denial of basic procedural fairness, nor any arbitrary or capricious conclusion made by the local board.
 
 
 67
 The judgment of conviction in each case is affirmed.