UNITED STATES of America,
Appellee,

v.

Stephen Eugene ABBOTT, Appellant.

No. 19816.

United States Court of Appeals,
Eighth Circuit.

April 28, 1970.

Peter E. Rindskopf, Atlanta, Ga., for appellant; Howard Moore, Jr., Atlanta, Ga., on the brief.

Duane L. Nelson, Asst. U. S. Atty., Omaha, Neb., for appellee; Richard A. Dier, U. S. Atty., and Edward S. Szukelewicz, Atty., Criminal Division, Dept. of Justice, Washington, D. C., on the brief.

Before BLACKMUN, GIBSON and LAY, Circuit Judges.

LAY, Circuit Judge.

Stephen Abbott appeals his conviction under 50 U.S.C. App. § 462 arising out of his refusal to submit to induction into the armed forces of the United States.

On October 19, 1967, Abbott reported, as ordered, to the induction center in Atlanta, Georgia, but refused to take the symbolic step forward to be inducted. After indictment, his residence being originally in Lincoln, Nebraska, his case was transferred to the District of Nebraska pursuant to Fed.R.Crim.P. 21(b). He was there tried and found guilty by a jury. After motions for judgment of acquittal and new trial were overruled he appealed. The fundamental issue raised in this appeal [1] is whether there existed a basis-in-fact to deny the defendant-registrant's application for exemption as a conscientious objector under 50 U.S.C. App. § 456(j).

Upon review we find there was no basis-in-fact to support the board's I-A classification. We reverse and remand

[1] In view of our reversal it is not necessary to pass upon the alleged procedural errors also raised on appeal.

with directions to enter a judgment of acquittal.

Stephen Abbott, initially registered with Selective Service Board No. 58, Lancaster County, Lincoln, Nebraska, on February 7, 1962. On March 13, 1964, he was mailed a classification questionnaire, SSS Form 100. In completing that form, he informed the local board that he had had two years of college at the University of Nebraska and had completed two years of basic R.O.T.C. at the University. He left blank the portion of the questionnaire relating to an exemption as a conscientious objector. However, he stated that he was presently a student at Immaculate Conception Seminary in Conception, Missouri, studying for priesthood in the Catholic Church. On April 10, 1964, he was classified I-A. On May 13, 1964, upon receipt of a certificate of enrollment from the registrar at Immaculate Conception Seminary, his local board changed this classification to IV-D.

■ Abbott left the seminary in the summer of 1965 and enrolled at the University of Nebraska. The local board did not learn of his change of status until January 25, 1966, at which time he was sent a current information questionnaire. He then informed the board that he was attending the University and that he planned to receive his degree in August of 1966. On February 16, 1966, he was given a II-S student deferment effective until July 1, 1966. On July 1, 1966, Abbott requested a conscientious

objector Form 150, which was mailed to him and subsequently returned. At that time he acknowledged belief in a Supreme Being and set forth his opposition to the use of force and war. His written statement [2] alleges opposition to war based upon Christian religious precepts sufficient to meet the statutory criteria of a conscientious objector as defined under United States v. Seeger, 380 U.S. 163, 85 S.Ct. 850, 13 L.Ed.2d 733 (1965). Cf. Packard v. Rollins, 422 F. 2d 525 (8 Cir. 1970). On July 14, 1966, he was ordered to report for his physical examination. On August 3, 1966, he was classified I-A by his local board. He appealed to the Iowa State Appeal Board. At this time he had assumed a teaching position in Clearfield, Iowa, following graduation from the University of Nebraska. On appeal, he was given a II-A classification (occupational deferment). On November 23, 1966, the registrant asked his local board for a personal appearance to present his conscientious objector claim. He appeared before them on January 24, 1967. At that time his application for a I-O classification was denied and he was once again classified as I-A. He again appealed. Upon appeal he was given a II-A deferment by reason of his teaching position. Within the above chronology, it should be noted that on March 2, 1967, Abbott wrote his board and expressed concern because his claim for conscientious objection had not been ruled upon.[3] The local board answered

---

2. He wrote in part:
"Force as exemplified in the Armed Forces would prevent me from fully serving my Christian witness as I feel called by conscience to live it. In 295, twenty-one year old St. Maximilian refused to be drafted into the Roman army saying before the Roman Proconsul in North Africa: 'I will not be a soldier of this world for I am a soldier of Christ.' Reminded that other Christians were serving as soldiers, he said: 'That is their business. I also am a Christian and I cannot serve.' St. Martin of Tours said, resigning from the Roman army in 336: 'I am a soldier of Christ and may not fight;

the weapons of blood are discarded, that the weapons of peace may be girded on.' "

3. Abbott's letter of March 2, 1967, reads:
"I recently appealed the I-A classification you gave me after my hearing before you because I am a conscientious objector to war participation. Today I was surprised to get a II-A classification with three x's over the box that says by Appeal Board (I'm thus not sure whether the appeal Board has so classified me or whether you have and the three x's are a mistake). At any rate I appeal the II-A classification, if it jeopardizes the appeal for I-O I

that the appeal board had given him "the lowest possible classification" he was entitled to, and that he could renew his request for a I–O classification at a later date. On June 15, 1967, he was again reclassified I–A by his local board. On this appeal to the Nebraska State Appeal Board this classification was not changed.

■■■ The selective service file does not reveal the grounds upon which Abbott's conscientious objector claim was rejected. The appeal board's classification of Abbott as I–A was, of course, a de novo review. 32 C.F.R. § 1626.26(a) (Supp.1969). See United States v. Hesse, 417 F.2d 141, 143 (8 Cir.1969); Vaughn v. United States, 404 F.2d 586, 592 (8 Cir.1968); DeRemer v. United States, 340 F.2d 712, 719 (8 Cir.1965). Prior to the Military Selective Service Act of 1967, 50 U.S.C.App. § 456(j), an appeal board could utilize the personal interview by a hearing officer to assess a registrant's credibility. This provision has now been deleted from the act.

See United States v. Hesse, supra. Since there is no longer an opportunity for the appeal board to personally interview the registrant, the appeal board's classification must rest solely upon objective facts within the selective service file itself. Witmer v. United States, 348 U.S. 375, 382, 75 S.Ct. 392, 99 L.Ed. 428 (1955); United States v. Hesse, supra; United States v. Haughton, 413 F.2d 736 (9 Cir.1969); United States v. Washington, 392 F.2d 37 (6 Cir.1968); United States v. St. Clair, 293 F.Supp. 337 (E.D.N.Y.1968). A local board may find that an applicant lacks sincerity in his beliefs because his demeanor demonstrates a shiftiness or evasive attitude which would substantiate unreliability. Witmer v. United States, supra 348 U.S. at 382, 75 S.Ct. 392. However, this cannot serve as a basis-in-fact for an appeal board to reject a conscientious objector claim unless there exists some disclosure of this finding of unreliability by the local board on the applicant's selective service record.[4] Whether there exists a

made after my local hearing. It is true I will be teaching until the end of May but the plethora or classifications and reclassifications is only confusing to me until I have confirmation that the Selective Service recognizes me as basically I–O, that is a person who is willing to do alternative service but who is in conscience opposed to any war participation. It is difficult to plan one's future not knowing how one stands on this essential matter."

4. In the instant case one of the local board members testified at trial that the registrant's conscientious objector claim was rejected because of "insincerity." The defendant was not allowed to pursue examination of the board member to determine the basis for his conclusion. It is uniformly held that a mere *ipse dixit* disbelief is not sufficient support for such a determination without affirmative evidence to measure contradiction. Witmer v. United States, supra; United States v. Hesse, supra; Batterton v. United States, 260 F.2d 233 (8 Cir. 1958); Kessler v. United States, 406 F.2d 151 (5 Cir. 1969); Fleming v. United States, 344 F.2d 912 (10 Cir. 1965); United States v. Warner, 284 F.Supp. 366 (D.Ariz.1968). Cf. Matyastik v. United States, 392 F.2d 657 (5 Cir. 1968).

Significant, however, is the fact that the government cannot supply an evidentiary basis of insincerity at trial that does not already appear within the four corners of the file itself. Fundamental due process requires that the defendant be entitled to either know or be able to infer from the file itself the basis for the rejection of a conscientious objector claim. Cf. United States v. Cummins, 425 F.2d 646 (8 Cir. 1970); United States v. Owen, 415 F.2d 383 (8 Cir. 1969). And see discussion by Judge Weinstein in United States v. St. Clair, supra, and cases collected in ¶ 2257 n. 17, SSLR 1121 (1968). This knowledge is not only important in his claim for reopening at the level of the local board but essential to his ability to rebut such findings on appeal. See Gonzales v. United States, 348 U.S. 407, 75 S.Ct. 409, 99 L.Ed. 467 (1955). It would be grossly unfair for a selective service board to reject a conscientious objector application on an unlawful basis (cf. United States v. Pence, 410 F.2d 557 (8 Cir. 1969)) and then, in retrospect, to assert a totally different ground at trial. It is well settled that a registrant is entitled to know the content of his file so as to be aware of any adverse evidence therein. See 32 C.F.R. § 1606.32 (Supp.1969). See also United States v. Cummins, supra.

basis-in-fact for the appeal board's classification presents a question for the court, and is not an issue for the jury to hear evidence upon and consider. Cox v. United States, 332 U.S. 442, 68 S.Ct. 115, 92 L.Ed. 59 (1947).[5]

We turn then to the defendant's selective service file to see if there is any basis-in-fact to support a I–A classification by the appeal board. Witmer v. United States, supra; Batterton v. United States, supra; United States v. Washington, supra; Parrott v. United States, 370 F.2d 388 (9 Cir.1966).

As we understand the government's argument, the combination of three factors in Abbott's file demonstrates his lack of sincerity: (1) the fact that Abbott belatedly applied for a conscientious objector status and at a time when his induction was imminent; (2) the fact that Abbott applied for other deferments (IV–D, II–S and II–A) and (3) the fact that Abbott's pacifism did not result wholly from his Catholic training, but rather in substantial part from a philosophical basis which included opposition only to selective wars.

The government relies upon Bishop v. United States, 412 F.2d 1064 (9 Cir. 1969), and United States v. Pritchard, 413 F.2d 663 (4 Cir.1969), as authority for the proposition that a registrant's late filing, as well as his prior application for other deferments provide a basis-in-fact for a finding of insincerity. See also Witmer v. United States, supra; United States v. Henderson, 411 F.2d 224 (5 Cir.1969); and Salamy v. United States, 379 F.2d 838 (10 Cir.1967). These cases, however, each involve some additional inconsistency within the selective service file which served to complement the registrant's late filing in order

---

It therefore follows that only evidence which is in the file itself may be considered by the court in determining whether there existed a basis-in-fact for the appeal board's finding. Cf. Cox v. United States, 332 U.S. 442, 68 S.Ct. 115, 92 L.Ed. 59 (1947); United States v. Washington, supra.

5. The Ninth Circuit in United States v. Haughton, 413 F.2d 736, 738–739 (9 Cir. 1969), summarizes the case law applicable to these circumstances for testing a registrant's lack of sincerity:

"In *Parrott* (370 F.2d 388, 391), we quoted the majority opinion in *Dickinson* [Dickinson v. United States, 346 U.S. 389, 74 S.Ct. 152, 98 L.Ed. 132]: 'The task of the courts in cases such as this is to search the record for some affirmative evidence to support the local board's overt or implicit finding that a registrant has not painted a complete or accurate picture of his activities.' 346 U.S. at 396, 74 S.Ct. at 157.

"We interpreted this language to mean that 'since in *Dickinson* all evidence before the board established the exemption, the registrant had met the statutory criteria, and the board could not, without any contrary evidence, simply say it disbelieved him, "even in the absence of any impeaching or contradictory evidence."' 370 F.2d at 391 (quoting *Dickinson* at 396, 74 S.Ct. 152).

"*Dickinson* involved a ministerial exemption. Conscientious objection requires a different approach 'because the ultimate question * * * is the sincerity of the registrant in objecting on religious grounds, to participation in war in any form.' Witmer v. United States, 348 U.S. 375, 381, 75 S.Ct. 392, 396, 99 L.Ed. 428 (1955). The Sixth Circuit, after reviewing *Witmer* and *Dickinson*, said: 'Where, however, the veracity of the registrant is the principal issue, disbelief will suffice. But even in the latter situation, the record must contain some statement of this disbelief if the classification is to be upheld on judicial review.' * * * Inconsistent statements or actions or a finding of insincerity may support the denial of conscientious objector status. * * * The local board, however, must state the reasons for its denial of a requested classification when a registrant has 'met the statutory criteria' (*Parrott, supra*, [370 F.2d] at 388) for that classification or, in the language of *Dickinson*, has placed himself 'prima facie within the statutory exemption.' 346 U.S. at 397, 74 S.Ct. at 158. Kessler v. United States, 406 F.2d 151, 156 (5th Cir. 1969). Otherwise a court cannot determine whether a board's denial of a requested classification was based on a belief that the registrant's statements, even if true, did not entitle him to the classification, or on the reasonable disbelief of certain allegations necessary to the registrant's *prima facie* case."

to contradict a claim of conscientious objector status. For example, in Bishop v. United States, supra, the applicant himself had claimed that his beliefs had existed since 1959 even though he did not file his request until 1965. Furthermore, several residents of Bishop's neighborhood had cast doubt upon the sincerity of his religious beliefs, suggesting that Bishop was raising his religion as a "front" to evade the draft. Also, Bishop demonstrated only the vaguest understanding of his religious beliefs. As explained in United States v. Haughton, supra, in Witmer v. United States, supra, there existed inconsistent statements which contradicted the conscientious objector claim. In United States v. Henderson, supra, the court placed emphasis upon the defendant's lack of church activities.

In Salamy v. United States, supra, the Tenth Circuit emphasized that the registrant originally and specifically disclaimed being a conscientious objector and sought a deferment on hardship grounds. Salamy's appearance and demeanor were also considered as affecting his claim. United States v. Pritchard, supra, may be similarly distinguished.

This line of cases has recently been distinguished by the Second Circuit in United States v. Bornemann, 424 F.2d 1343 (2 Cir.1970). As pointed out by the *Bornemann* case, in these cases there was a substantial period of time where the presentation of a conscientious objector claim "might [have resulted] in the registrant being placed in a different classification." However, when a registrant makes application at the time when his beliefs become "relevant" to his classification, then lateness of the claim cannot affect the registrant's sincerity. Abbott's earlier presentation of his conscientious objector's claim, like Bornemann's, would not have resulted in his being classified as a conscientious objector since he was entitled to a defer-

ment on the basis of a lower classification on other grounds.

In the instant case, Abbott traced his conviction as a conscientious objector to his experiences in the Immaculate Conception Seminary from 1964 through 1965. He related that one of the Trappist monks at the seminary in particular had a tremendous influence upon his views. At the time he filled out his Form 100, in 1964, he left the conscientious objector questionnaire blank and filled in the column which assured him a IV–D exemption as a student studying for the priesthood. The government's argument that he should have asserted his conscientious objector status at that time lacks merit. His IV–D exemption was a lower classification and the board could not have considered an application for a conscientious objector classification at that time.[6] Furthermore, there is no inconsistency between a IV–D status and a conscientious objector classification. United States v. Owen, supra. The same reasoning is applicable to his II–S deferment after he returned to the University of Nebraska in 1965. If he were to have been classified as I–O, at that time, rather than II–S, he would have been subject to the draft and unlawfully deprived of his mandatory deferment as a student. United States v. Rundle, 413 F.2d 329 (8 Cir.1969). His occupational deferments were granted by the appeal boards *after* he had filed his application for classification as a conscientious objector. Moreover, his letter of March 2, 1967, to his local board demonstrated his good faith claim that he still desired to pursue his appeal for a I–O classification. See n. 3 supra.

Judge Miller observed in United States v. Owen, supra 415 F.2d at 390:

"[T]he fact that Owen sought other classifications after being denied a I–O classification is in no way inconsistent with his claimed conscientious objection. Certainly it cannot be ra-

---

6. 32 C.F.R. § 1623.2 (Supp.1969) provides that when grounds are established to place a registrant in one or more classes, he is to be classified in the lowest class.

tionally contended that he waived or abandoned his claim by requesting classification as a divinity student. Pine v. United States, (4 Cir.1954) 212 F.2d 93; Cox v. Wedemeyer, (9 Cir.1951) 192 F.2d 920. Neither do we feel that registrants claiming conscientious objection may apply for other unrelated classifications only at their peril. To so hold would chill the right Congress sought to protect in enacting § 6(j), and would undermine the principles of individual conscience. It is enough that registrants are confronted with a complex administrative process which is nonetheless deliberately nonadversary, and in which the right to be represented by counsel is expressly denied."

 We find no basis-in-fact from these circumstances to doubt the registrant's sincerity. The government's other argument that Abbott did not base his claim totally on religious grounds and only selectively objected to wars, must also fall. As we made clear in United States v. Levy, 419 F.2d 360 (8 Cir.1969), the Supreme Court in *Seeger* requires that one's pacifist belief be "totally devoid" of religious grounds before exemption as a conscientious objector may be denied. 380 U.S. at 186, 85 S.Ct. 850, 13 L.Ed.2d 733. Furthermore, Abbott's file substantially demonstrated that his beliefs were centered around Christian teachings. The government urges, however, that Abbott's statements that (a) "[he] cannot serve in milt. capacity because war unleases uncontrollable force unguided by either love or reason. War guided by expediency."; (b) "[there is] always, danger small war esculate [sic] into world war"; and (c) "my approach is not so much *against* war, but to work *for* peace and unity" reflect contradiction to his exemption. This, however, seems a strained interpretation. Even so, these statements when considered within the overall context of Abbott's written

beliefs,[7] hardly demonstrate that his beliefs are totally devoid of a religiously based conscientious objection to the use of force and war.

In United States v. Pence, supra at 410 F.2d 563, we observed:

"[A]ny meaningful society based upon law strives to recognize those principles of individual conscience within reasonable bounds and to make meaningful the integrity of spiritual values to every extent possible without conflict with the public need."

Congress has seen fit to exempt a person from military service if, because of his religious principles, he is conscientiously opposed to bearing arms. It is our duty to apply this exemption in this specific case.

It is our judgment that there exists no basis-in-fact to deny Stephen Abbott his claim as a conscientious objector. We therefore set aside his conviction.

Judgment reversed and remanded with directions to enter a judgment of acquittal.

---

7. Abbott's statements set forth above are isolated from five pages replete with out-spoken opposition, based upon religious principles, to force and war.