449 F.2d 523
 Oliver A. ROSENGART, Petitioner-Appellant,
v.
Melvin A. LAIRD, Secretary of Defense, Stanley R. Resor,
Secretary of the Army, and Commanding Officer,
Fort Benjamin Harrison, Indianapolis,
Indiana, Respondents-Appellees.
 No. 646, Docket 35684.
 United States Court of Appeals,
Second Circuit.
 Argued Jan. 7, 1971.
Decided June 9, 1971.
 
 Joan Goldberg, New York City (Rabinowitz, Boudin & Standard, New York City, on the brief), for petitioner-appellant.
 Alan B. Morrison, Asst. U. S. Atty., New York City (Whitney North Seymour, Jr., U. S. Atty., S. D. of New York, New York City, on the brief), for respondents-appellees.
 Before LUMBARD, MOORE and SMITH, Circuit Judges.
 MOORE, Circuit Judge:
 
 
 1
 Oliver A. Rosengart appeals from an order of the United States District Court for the Southern District of New York entered on November 23, 1970, denying his application for a writ of habeas corpus in a proceeding under 28 U.S.C. Sec. 2241(c) (1) (3) seeking his discharge from the United States Army Reserves as a conscientious objector. A short stay of Rosengart's obligation to report for active duty was entered by consent at the commencement of this action; thereafter, the district court entered further stays which were continued in effect until its final determination, at which time it dissolved the stay. On December 8, 1970, this court entered a stay pending the outcome of this appeal and ordered an expedited appeal.
 
 
 2
 The gravamen of this appeal is that there was no factual basis for the Army's determination that Rosengart was not entitled to a discharge and that the multiple remands to the Army below deprived Rosengart of his rights to due process of law, the denial of which it is argued entitles him to his much-sought-after discharge. We affirm.
 
 FACTS AND ADMINISTRATIVE PROCEDURAL HISTORY
 
 3
 In September 1959, while a freshman at the City College of the City of New York (CCNY), Rosengart enrolled in that college's ROTC program. Upon the completion of his five-year program in engineering, he was commissioned as a second lieutenant in the United States Army Reserves in June 1964; his active duty date was postponed to a date beyond the completion of his law studies at New York University, which was in June 1967. Shortly after his law school graduation, Rosengart was informed that he was to report for active duty on April 10, 1968.
 
 
 4
 Beginning in December 1967, Rosengart began the first in a series of maneuvers to avoid meeting his active duty obligation.[1] On a routine Army "Statement of Physical Condition for Promotion," dated December 27, 1967,[2] Rosengart stated that he believed himself "psychologically unfit to serve in the U.S. Army." This conclusion was grounded on Rosengart's regular psychotherapy treatment over the previous 21 months, his belief in the necessity of further treatment "for a considerable length of time," and his therapist's statement to him that "she believes that I am unfit for military service and will so state in a letter." Rosengart then requested a psychiatric examination "to determine whether I am fit for military service." On February 23, 1968, Rosengart reported for a medical examination at the New York City Armed Forces Examining Station, where he filled out the standard "Report of Medical History,"[3] which contains the following references of interest: (1) in giving a statement of his "present health in his own words," Rosengart stated, "My psychological health is not good. I have been in psychotherapy for almost two years"; (2) in response to a question addressed to any school-related difficulties which he may have had, Rosengart stated that he was "a chronic underachiever in school";[4] and (3) in response to a question whether he had ever treated himself for illnesses other than a minor cold, Rosengart stated, "I get an occasional 24 hour stomach virus. [!]" On March 4, 1968, an Army psychiatrist found Rosengart fit for military duty, noting that his history did not reveal "any serious pathology," that he made a "favorable impression," and that "in view of his adequate civilian adjustment he should adjust to military life."[5]
 
 
 5
 While his request for a medical discharge was still pending, and only very shortly after he had received a new set of active duty orders dated January 22, 1968 confirming his active duty date of April 10, 1968,[6] Rosengart initiated formal application for a personal hardship deferment. The delay in reporting for active duty was sought because of the great financial, mental and physical hardship to his former German refugee parents, especially to Rosengart's mother, who was suffering from an increasingly deteriorating case of multiple sclerosis, which his early reporting presumably would have aggravated. Rosengart's father, it was alleged,[7] would be unable to pay the soaring medical expenses because of the loss of his principal source of income as a German reparations lawyer. Consequently, it was argued, Rosengart as the only child would be required to contribute some $4,000 to $5,000 per year to the support of his parents, presumably through his continued employment as a well-paid lawyer in a patent law firm for which he was then temporarily working prior to his active duty reporting date. While this application was pending, Rosengart received a further delay.[8] On May 3, 1968, his application for a deferment was denied.[9]
 
 
 6
 Undeterred by this rebuff, Rosengart renewed his request for a hardship deferment and submitted additional material in support thereof, including letters from his mother's doctor, the family rabbi[10] as well as a letter from Rosengart himself.[11] This request also was based on his ability to contribute to the maintenance and support of his failing mother and apparently unemployable father. On June 24, 1968, Rosengart was denied his deferment and ordered to report for active duty on August 6, 1968.[12]
 
 
 7
 On July 8, 1968, Rosengart applied for a discharge as a conscientious objector (CO) and submitted his completed application dated August 1, 1968. Pursuant to regulation,[13] Rosengart was interviewed by a psychiatrist, chaplain and a hearing officer, Major Mohr, each of whom recommended that Rosengart be discharged from the Army as a bona fide CO. He also was granted a further delay, pending the determination of his most recent application. On or about January 20, 1969, Rosengart was advised by the Army's Chief Reserve Personnel Officer at Fort Benjamin Harrison, Indiana, Col. Hoffman, that his request for a discharge was "disapproved" because "[t]he determination has been made that you do not qualify for a conscientious objector classification."[14] Because no reasons were given in the January 20 letter, as required by AR 135-25, the Army agreed to reconsider the application after the procedural irregularity issue was raised by Rosengart.
 
 
 8
 On or about February 27, 1969, Rosengart was reinterviewed by the same psychiatrist and chaplain and by a new hearing officer, Capt. Koch. In his findings,[15] Capt. Koch stated the following:
 
 
 9
 "2. * * * After his commission in June of 1964, Lt. Rosengart realized his objection to war during his attendance at a series of religiously oriented nonsectarian camps devoted to peaceful ideals. Lt. Rosengart appears to have started a career with [a] public service organization and is presently a staff attorney with Mobilization for Youth Legal Services. Lt. Rosengart stated [that] he is willing to perform in any capacity which the Army may direct."3. Recommend Lt. Rosengart be considered to be a bona fide conscientious objector and that he be discharged * * * in order to permit service in the Conscientious Objectors Work Program."
 
 
 10
 By letter dated April 4, 1969, Col. Hoffman advised Rosengart that his "request for discharge by reason of conscientious objection has been disapproved" on the grounds that his application and supporting documentation "indicates [that] your claim as a conscientious objector is based primarily on a personal code, philosophical views and sociological experience."[16]
 
 
 11
 Thereupon, on April 17, 1969, Rosengart commenced this habeas corpus action.
 
 PROCEEDINGS BELOW
 
 12
 Following argument on the petition, the district court by opinion and order[17] remanded Rosengart's case to the Army's Conscientious Objector Review Board (Review Board), directing it to reply to four questions relating to the Review Board's prior determination of Rosengart's CO discharge application.[18] The court remanded, although it noted that Rosengart's "201" file "contains evidence which affirmatively blurs the picture painted by petitioner and casts doubt on the sincerity and genuineness of his claim of beliefs which would debar active duty."[19] Objection to the district court's procedure was made by way of motion for reargument and was denied.
 
 
 13
 In due course, the Army replied and indicated that with respect to Question 3, note 18, supra, it believed that Rosengart had to show that he had some religious training since joining the Army in order to qualify for a CO discharge.[20] The district court in a supplemental opinion[21] found that the Army Regulation does not require postserviceentrance religious training, and that the Review Board appeared to have acted contrary to regulation. Rather than dismiss or grant the petition, the district court once again remanded the case to the Army, this time for a de novo hearing and determination on the merits. The Army again came back to court, stating its view that Rosengart was not entitled to a discharge on the ground that his application was based on philosophical views, sociological experiences and a personal moral code.[22] The Government moved to dismiss the petition on the ground that such views did not come within the standards for conscientious objection established by the Supreme Court in United States v. Seeger.[23] The district court reserved decision pending the Supreme Court's decision in United States v. Sisson,[24] a case in which a Massachusetts district court had held that a religious-nonreligious distinction in CO cases violated the First Amendment of the Constitution, a contention urged by Rosengart below. Although Sisson was dismissed on procedural grounds, the Supreme Court decided Welsh v. United States.[25] Pursuant to the Government's motion, the district court by order dated July 3, 1970, again remanded the case to the Review Board for redetermination in the light of the newly announced standards in Welsh.[26]
 
 
 14
 A newly comprised Review Board considered Rosengart's application for a final time, with the benefit of the determinations of the prior Review Boards, the directions of the district court and all of the findings made by the four interviewing officers. Based upon this data and upon all of the information contained in Rosengart's "201" file, the Review Board unanimously concluded that Rosengart was not entitled to a CO discharge. The Board found that any conscientious objection held by Rosengart was based solely on philosophical views and sociological experiences (a curious finding in the light of Welsh)[27] and that Rosengart's "purported conscientious objective [sic] beliefs are not truly held."[28] The Government again moved to dismiss the petition. The district court found that there was a "substantial basis in the record" for the Board's denial of Rosengart's application on the ground of insincerity of belief and accordingly dismissed the habeas corpus petition on November 23, 1970.[29]
 
 I.
 
 15
 At the outset we note that because this case turns on other grounds, we assume without deciding that Rosengart's beliefs are religious within the meaning of Sec. 6(j) of the Selective Service Act of 1967,[30] as construed by the Supreme Court in Welsh. Moreover, in deciding this case we do not rely on the various proceedings or maneuvers employed by Rosengart in seeking discharge from his originally voluntarily assumed military active duty obligation previous to his application for a CO discharge. Each application, standing alone, appears substantial and not inconsistent with Rosengart's eleventh hour application. We do rely, however, on the supporting documentation submitted in connection with Rosengart's earlier applications, but only insofar as they provide indicia of inconsistency with his claimed status as a CO, i. e., as they cast a cloud upon the sincerity of his professed deeplyheld beliefs of conscientious objection.[31]
 
 
 16
 The standard by which we must be guided on this appeal is whether there exists within the four corners of the record affirmative objective evidence constituting a "basis in fact" for the Review Board to conclude as it did that Rosengart's "purported conscientious objective [sic] beliefs are not truly held."[32] Reliance upon unfounded assumptions or ipse dixit disbelief is not enough.[33] We are also mindful of Judge Smith's recent well taken observation in United States ex rel. Donham v. Resor,[34] that great weight ought to be accorded to favorable observations and recommendations of sincerity submitted by officers who have pursuant to regulation, personally interviewed a CO applicant.[35]
 
 
 17
 Since the Review Board gave no reasons for its finding of Rosengart's insincerity of belief, and since the district court spoke only in the most general terms with respect thereto, we have undertaken our own independent search of the record[36] for facts upon which the Army determination should be appraised.[37] We have determined from our reading of the record that the Army had available to it a set of inconsistent statements, made by Rosengart within a twomonth period in connection with two separate applications, which in all probability was not available to the four officers before whom Rosengart personally appeared at the initial stages of his AR 135-25 processing. This objective evidence, we believe, "substantially blurs the picture painted by [Rosengart] and thus casts doubt on his sincerity,"[38] vitiates the importance of the two hearing officers' recommendations (and also the purely advisory recommendations of the psychiatrist and chaplain) that Rosengart was sincere in his beliefs and that he, therefore, should be granted a CO discharge, and constitutes a "basis in fact" for upholding the determinations of the Army and the district court below.
 
 
 18
 The evidence to which we refer consists of arguably self-serving statements made by Rosengart with regard to the significance of his employment as a lawyer. On June 3, 1968, in support of his application for a hardship deferment, Rosengart stated that he had just passed the Patent Office bar examination which, in connection with his remunerative association with a patent law firm, would permit him to contribute greatly to the support of his incurably ill mother and unemployable father. Rosengart stated as follows:
 
 
 19
 "I recently passed the Patent Office bar examination and after this year I will be able to contribute about $3,000.00 per year (which sum will grow each year as my income grows) to my family. This money will be desperately needed by my family."[39]
 
 
 20
 What Rosengart failed to mention, however, was that since May 13, 1968, some three weeks earlier, he had taken a position as a staff attorney with New York's Mobilization for Youth. This material fact, omitted in the June 3 letter, emerged in Rosengart's August 1, 1968 CO discharge petition, as further proof of the sincerity of his beliefs in opposing all war. Rosengart stated, in pertinent part, that he was working at a salary"equal to approximately 60% of the salary which I could be earning in industry or in business law firm. I intend, at enormous sacrifice in earnings [and impliedly to his family's welfare], to devote my entire career to non-business public service work as a lawyer for poor people. I do not consider this a sacrifice-this is how I wish to live my life."[40]
 
 
 21
 Despite the facts that Rosengart had been a civil rights worker in Mississippi who had been shot at, and that he had come to abhor violence and had accordingly participated in "a series of religiously oriented nonsectarian camps devoted to peaceful ideals," we believe that the Army was entitled to draw the inference, not successfully rebutted here, that Rosengart as a matter of expedience had tailored his facts to fit the circumstances, to set aside or severely discount the importance of the hearing officers' recommendations made on the basis of incomplete information, and to deny his discharge application on the ground of insincerity. We so hold without stating whether we would come to the same conclusion reached by the Army Board; that is not our function. The federal courts are not super-Army review boards entrusted with the responsibility and authority to substitute their own judgments as to the weight and sufficiency of the evidence in the record. Indeed, the standard for review is not "substantial objective evidence" or "substantial basis in fact," but whether the record contains a "basis in fact" to support the Army's determination.[41] We hold that it does.
 
 II.
 
 22
 Rosengart contends that the procedures employed by the district court in remanding his application to the Army several times denied him due process. The thrust of this argument must be that the Army must in the first and only available instance act in the most punctilious fashion in the consideration and determination of a CO discharge application or face the prospect of losing the services of one of its officers on the smallest procedural technicality. This has never been this court's policy with regard to the relationship of the courts and the Armed Services, and we do not adopt so stringent a formulation here, which in the last analysis would perform a disservice to all concerned.
 
 
 23
 With respect to the first remand, we have an indication from the district court that prior to remanding it had available to it evidence already in the record "which affirmatively blurs the picture painted by petitioner and casts doubt on the sincerity and genuineness of his claim of beliefs which would debar active duty." It is not unreasonable to infer, therefore, that the court in posing certain questions to the Army was acting out of an excess of caution on behalf of all parties, including Rosengart, to ensure that all regulatory procedures had been complied with in the determination of the Rosengart application. The second remand was also unnecessary to decision, but was within the court's discretion to allow the Army to clear up its apparent misunderstanding with respect to the "requirement" that all CO applicants undergo postservice-entrance religious training. No actual prejudice to Rosengart resulting from this remand is alleged or apparent. Indeed, he had another full opportunity to prove the sincerity of his beliefs in opposition to war. The third remand, also unnecessary to decision, was for the inferable purpose of permitting the Army to reappraise an important but not controlling aspect of Rosengart's case in the light of changing laws.
 
 
 24
 In short, the court in the interest of justice accorded both the Army and Rosengart a fair opportunity to have the application considered and decided in compliance with established procedural requirements and existing and changing substantive law, without prejudice to the rights of either side. This was an approach not without precedent.[42]
 
 
 25
 The order dismissing the petition is affirmed.
 
 LUMBARD, Circuit Judge (dissenting):
 
 26
 I dissent.
 
 
 27
 Despite reviewing this case five times, the conscientious objector review board never gave a satisfactory reason for denying petitioner's application for discharge. On the other hand, the findings of sincerity by all four Army officials who interviewed petitioner are persuasive and conclusive on the record before us. I cannot agree with the majority that one supposed inconsistency between Rosengart's hardship request and his petition for discharge casts doubt on his sincerity. Nor do I think that this alleged discrepancy, which at best is inconsequential, provides a basis in fact for the board's action.
 
 
 28
 Oliver Rosengart's parents, who are refugees from Nazi Germany, early inculcated their son with an abhorrence of the violence and killing of war. In the summer of 1963 and the two summers thereafter, Rosengart worked at a racially integrated, non-profit camp attended by underprivileged youngsters, which was devoted to peace and non-violence. In the summer of 1966, he went to Mississippi as part of the civil rights movement, and narrowly escaped death from an assassin's bullet in Grenada, Mississippi. From October, 1966 until July, 1967, during his last year at New York University Law School, Rosengart was a student law clerk with Mobilization for Youth. On May 13, 1968, he returned to Mobilization for Youth as a staff attorney, and was assigned to the organization's Criminal Law Division. In August, 1968, he submitted his application for discharge from the United States Army Reserve as a conscientious objector.
 
 
 29
 In his application for discharge, Rosengart described his beliefs in the fundamental goodness of all men, the necessity of loving all men, and the moral imperative of non-violence.[1] In a supplementary statement, Rosengart added that the kindness and love he saw in every man was a manifestation of "God and Godliness." Several letters were submitted in support of Rosengart's application, and each confirmed the picture of a deeply idealistic young man whose pacifist views gradually evolved through participation in antipoverty and civil liberties activity.
 
 
 30
 In accordance with military regulations, Rosengart was interviewed by a major, a chaplain, and a psychiatrist-all Army personnel. All of these interviewers thought Rosengart was sincere. The Army review board at Fort Benjamin Harrison, Indiana, at first denied Rosengart's application, but then agreed to reconsider. Accordingly, Rosengart was reinterviewed by the same chaplain and psychiatrist, who adhered to their prior opinions. Rosengart also appeared before a different hearing officer, Captain Koch, who agreed with Major Mohr that the petitioner should be discharged as a bona fide conscientious objector. Despite the review board's initial disapproval, then, all persons who interviewed Rosengart were convinced of his sincerity.
 
 
 31
 Because I conclude that the military review board did not consider Lieutenant Rosengart's discharge application fairly, that the district court should have granted the writ of habeas corpus over two years ago, and that there is no basis in the record to doubt petitioner's sincerity, I dissent.
 
 I.
 
 32
 The first time the conscientious objector review board at Fort Benjamin Harrison considered and denied Rosengart's application, in January, 1969, after three interviewers had attested to his sincerity, it stated that the file "portrays an image of an intelligent individual with deep rooted philosophical and idealistic convictions." However, it recommended disapproval because "Rosengart's beliefs are not founded in religious training and belief acquired since becoming affiliated with the military service."[2]
 
 
 33
 Because this Board failed to comply with regulations, the Army agreed to a redetermination. Captain Koch, the hearing officer "knowledgeable in policies and procedures relating to conscientious objector matters," DoD 1300.6, Sec. VI(B) (4), recommended that Rosengart be considered "a bona fide conscientious objector" who realized his objections to war during his attendance at the non-sectarian camp.[3] The Army psychiatrist stated that Rosengart "made a religion out of the importance of human life and felt that there was no justification to kill anyone and that for that reason all wars, as a matter of principle, were morally wrong (like capital punishment)." This psychiatrist also received the "impression that this man is honest." The Army chaplain was of the "opinion that Mr. Rosengart is sincere in his belief objecting to combatant training and service. However, since he is of the Jewish faith and nonpracticing, his belief is based more on a humanitarian attitude than on a formal institutionalized religious belief. He does believe in a Supreme Being, and this likewise forms part of the basis for his objection."[4]
 
 
 34
 On March 19, 1969, the conscientious objector review board again refused to grant Rosengart's application for discharge. Its reasons for doing so are set forth in full in the margin.[5] The board nowhere questions the sincerity of Rosengart's opposition to all wars. Rather, it is clear that they accepted this, as had the January 1969 review board, but believed that his case was "based on sociological experiences, a personal moral code, and philosophical beliefs." The board did doubt the sincerity of Rosengart's claim that his beliefs were religious in nature, because he had received no religious training since childhood or since joining ROTC, and his subsequent experiences were "simply sociological." But the board agreed that Rosengart had a "strong personal moral code that was influenced by sociological experiences" (emphasis added).
 
 
 35
 The votes of the individual members of the review board buttress the conclusion that Rosengart's sincere opposition to all war was believed. Two of the three board members answered "yes" to the only two questions relevant to the issue of sincerity: "Is the applicant's statement regarding the use of force credible when compared to the rest of his application?"; and "Has the applicant made any sacrifices in support of his alleged beliefs?"[6] On the other hand, the board members agreed that Rosengart's convictions were not "well founded in religious training and belief," and that his conscientious objection was based on sociological reasons (one member did not agree), philosophical views, and a personal moral code. As the government stated at the time in an affidavit dated April, 1969, the board found that Rosengart was not opposed to war "based on his religious beliefs."At this point, Judge Pollack should have granted a writ of habeas corpus, for the reasons advanced by the board were erroneous as a matter of law and without a basis in fact. The board noted that Rosengart received no formal religious training subsequent to entering military service, but none is required. United States v. Seeger, 380 U.S. 163, 186, 85 S.Ct. 850, 13 L.Ed.2d 733 (1965); DoD 1300.6, Sec. IV(B) (4) ("claims based on conscientious objection growing out of experiences prior to entering military service, but which did not become fixed until entry into the service, will be considered").
 
 
 36
 The board also noted that Rosengart's early religious training in Judaism did not prevent him from entering military status, but Rosengart joined ROTC in 1959, well before his pacifist views formed. Neither the fact that petitioner is "not a practising Jew" nor the "unspecified vague manner" in which he is associated with Quakers and Humanists casts doubt on his beliefs. United States v. Seeger, supra. The board then asserted that Rosengart's experiences after joining ROTC were "simply sociological experiences that no doubt influenced his personal moral code." Few indeed are the instances where "sociological experiences" do not go into the mixture which spawns a conscientious objector, and courts have recognized that as long as the end product is a deep-rooted conviction against war which occupies a central place in a person's scheme of values, that individual's claim of conscientious objection should be recognized. Welsh v. United States, 398 U.S. 333, 339-343, 90 S.Ct. 1792 (1970); Fleming v. United States, 344 F.2d 912, 916 (10th Cir. 1965).
 
 
 37
 Next, the board viewed Rosengart's application, quoted earlier, as a "crude attempt to align a weakness in his case with the regulatory requirements." I see no basis for this statement, nor can I find any basis in the record to support the board's conclusion that Rosengart's humanist beliefs in love, man's basic goodness, and pacifism are non-religious as that term has been defined in United States v. Welsh, supra, and United States v. Seeger, supra. See United States ex rel. Conrad v. Hoffman, 435 F.2d 1273 (7th Cir. 1970).
 
 
 38
 Since there was no basis for the review board's determination, Rosengart was entitled to the relief he requested. Instead, Judge Pollack, in an opinion dated April 24, 1969, after stating some facts which he believed cast doubt on petitioner's sincerity, remanded to the review board to determine, inter alia, whether they "found that petitioner's opposition to war is not genuine or sincere on the basis of affirmative evidence." He thus failed to note that the board had not questioned the sincerity of Rosengart's opposition to war, and erred in pointing to a reason for disqualification that the board had eschewed. Gresham v. Franklin, 315 F.Supp. 850, 853 (N.D.Cal.1970); Benway v. Barnhill, 300 F.Supp. 483, 486 (D.R.I.1969).
 
 
 39
 On remand, in July, 1969, a newlyconstituted review board responded to Judge Pollack's four questions, which are set forth at note 18 of the majority opinion. In response to the first question, the board pointed to the belatedness of Rosengart's conscientious objection claim and his previous requests for deferment as evidence of his insincerity, a finding undoubtedly facilitated by Judge Pollack's first opinion. The validity of these reasons will be discussed infra. However, the board also "determined that 1 LT Rosengart is opposed to war in all forms solely on non-religious grounds, i. e. sociological experiences, a personal moral code, and philosophical beliefs."
 
 
 40
 Faced with this apparent inconsistency, the government explained:
 
 
 41
 "They [interviewers] found that he sincerely opposed war in all forms, and the Board accepted those findings. It rejected only the conclusion that such beliefs met the standard imposed by the Army, a question on which the interviewing officers' opinions carry no special weight. * * * Since it is not petitioner's opposition to war that was doubted, but the basis of that opposition, any finding that he is sincerely opposed to war carries no weight on what the Board found to be the basis for the denial of petitioner's application-that the source of his beliefs were nonreligious."
 
 
 42
 Respondents' Reply Memorandum of Law, September 2, 1969. The government's contention at that time seems valid, as indicated by the board's answer set forth in the margin, to the second of Judge Pollack's questions, which was designed to find out whether the board thought that the interviewers had done their job.[7]
 
 
 43
 Since there was no doubt as to Rosengart's sincere opposition to all wars, and as stated earlier these beliefs are religious under Welsh and Seeger, petitioner should have been ordered released from the armed forces. In a supplementary opinion dated September 2, 1969, however, Judge Pollack overlooked this haystack and again remanded because of a needle: the board erred in its belief that religious training after enlistment must be shown.
 
 
 44
 On October 10, 1969, the board came up with new findings. First, it conveniently avoided the problem posed by Judge Pollack by concurring in its three previous findings "[w]ith the exception of any discussion of religious training and belief." The board proceeded to state:
 
 
 45
 "1 LT Rosengart's alleged conscientious objector beliefs are not truly held; that he is an opportunist simply endeavoring to avoid military service; and that any objections to war in any form he may truly hold are based solely on sociological reasons, philosophical views, and a personal moral code."
 
 
 46
 To buttress this statement, the board again relied upon Rosengart's late assertion of conscientious objection, his other requests to be relieved from active duty, and the fact that his experiences were "simply sociological and philosophical." The board also was unable to believe that Rosengart's ostensible conscientious beliefs were related to his belief in God,[8] and found some unspecified inconsistency in his application.[9]
 
 
 47
 This time Judge Pollack reserved decision pending disposition of United States v. Sisson, 297 F.Supp. 902 (D. Msas.1969), appeal dismissed, 399 U.S. 267, 90 S.Ct. 2117, 26 L.Ed.2d 608 (1970). He later remanded to the board for reconsideration in light of Welsh v. United States, 398 U.S. 333, 90 S.Ct. 1792, 26 L.Ed.2d 308 (1970).
 
 
 48
 On its fifth and final try, dated September 10, 1970, the board followed its last precedent to avoid a thorny question. This time, it concurred in the findings of the October 10, 1969 board "[w]ith the exception of any discussion concerning a personal moral code." With Welsh so readily disposed of, the board added, like its predecessor, that "1 LT Rosengart's purported conscientious objector beliefs are not truly held; and that any objection to war in any form he might sincerely hold is based solely on philosophical views and sociological experiences." As Judge Moore notes, this is a curious statement indeed in light of Welsh. The board concluded that Rosengart:
 
 
 49
 "is a low-educated, intelligent individual who has used the U. S. Army to further his personal goals; and when asked to serve his military obligation, has employed lawful conscientious objection as a controversial, convenient haven in which he could hopefully find refuge from military service."
 
 
 50
 Finally on November 23, 1970, Judge Pollack dismissed Rosengart's petition.
 
 
 51
 Attorneys with experience in dealing with Army boards of review, particularly those boards based at Fort Benjamin Harrison, Indiana, will smile grimly and knowingly upon reading this history. In a myriad of recent cases conscientious objector review boards, most if not all based at Fort Benjamin Harrison, have denied applications for discharge despite findings of sincerity by interviewing officers, using the identical, or virtually identical, convoluted language that was used by the board in its final two reviews of Oliver Rosengart's application. Until today, either none or, if my research is incomplete, very few of these cases survived judicial scrutiny. These cases are discussed at length in the margin, showing the review board's decision, the court's disposition, and any pertinent comments made by the court regarding the board's findings.[10]
 
 
 52
 If it is true that in numerous cases, including Rosengart's, the review board routinely denies applications from intelligent individuals (the one factor these cases apparently have in common), then the military authorities are violating their own regulations and the dictates of fundamental fairness. DoD 1300.6, Sec. VI(B) (8) directs "individual determination of action on the basis of the facts and the special circumstances of the case." AR 135-25(10) as in effect during the period Rosengart's application was under consideration mandated that "the individual requesting discharge will be furnished a logical reason for denial of his application"-a requirement assuredly not met by self-contradictory boilerplate.[11]
 
 
 53
 The fundamental unfairness of denying an application because of assumptions concerning the sincerity of intelligent individuals, ROTC graduates, or reservists needs no elaboration. Like others, these persons may develop sincere and conscientious opposition to war in any form after they enter military service.
 
 
 54
 Moreover, it is fundamentally unfair to set forth internally contradictory standard phrases in place of sensible reasons for a decision. As I stated in dissent in Fein v. Selective Service System, 430 F.2d 376, 387-388 (2d Cir. 1970) (Lumbard, C. J., dissenting), cert. granted, 401 U.S. 953, 91 S.Ct. 975, 28 L.Ed.2d 236 (U.S., March 8, 1971), as the only member of that panel to reach the merits of Fein's due process challenge:
 
 
 55
 "Whether or not the local board must state reasons whenever a prima facie case is established * * * I think it clear that the Appeal Board must do so when the registrant has been granted I-O status below. If in defense to a criminal prosecution for refusal to submit to induction Fein obtains judicial review of this decision, the court would be limited to the 'any basis in fact' standard. This means that we would search his file to find any rationale which would support the Appeal Board's decision. * * * But when the local board has found that the registrant is sincere in his beliefs and that his beliefs meet the statutory criteria, I think a search through the file for any rationale to support the Appeal Board is impermissible. Although the Appeal Board is nominally superior to the local board, I cannot see that its judgment, without the benefit of an interview with the registrant, is to be preferred unless accompanied by an explanation. If it does not agree with the local board, it must state in what ways it disagrees. Otherwise, reviewing courts-as both the Fourth and Ninth Circuits have found-are blind to potential mistakes of law made by the Appeal Board in the difficult area of conscientious objector classifications."
 
 
 56
 See also Scott v. Commanding Officer, 431 F.2d 1132 (3rd Cir. 1970); United States v. Lemmens, 430 F.2d 619 (7th Cir. 1970); United States v. Abbott, 425 F.2d 910 (8th Cir. 1970); United States v. Broyles, 423 F.2d 1299 (4th Cir. 1970); United States v. Haughton, 413 F.2d 736 (9th Cir. 1969).
 
 
 57
 If the interviewing officers have determined that an in-service applicant for discharge as a conscientious objector is sincere and that his beliefs meet the applicable requirements, the military review board stands in the same position as the selective service appeal board in Fein. In both instances, reviewing courts are limited to the "no basis in fact" standard, and while the in-service conscientious objector does not risk a criminal prosecution, he may face a court-martial. Without a clear statement of reasons the reviewing court cannot determine whether the board acted properly in either instance. The nominal superiority of the review board as well as the appeal board cannot substitute for the superior understanding derived from the personal interview unless accompanied by a rational explanation. And unlike the selective service situation, we are not imposing a new requirement on review boards, since the regulations already require a statement of reasons.
 
 
 58
 It is apparent that generalized, boilerplate phrases such as those involved herein in practical effect are indistinguishable from the "mere ipse dixit of lack of sincerity" condemned in United States v. Corliss, 280 F.2d 808, 814 (2d Cir. 1960), or the "ambiguous checkmark" of Paszel v. Laird, 426 F.2d 1169, 1175 (2d Cir. 1970). See also United States v. Broyles, 423 F.2d 1299 (4th Cir. 1970); United States ex rel. Morton v. McBee, 310 F.Supp. 328 (N.D.Ill.1970).
 
 
 59
 Even now, with the majority affirming the board's ostensible finding that Rosengart is insincere, I am not sure that the board ever made this finding, far less that it stated a satisfactory reason therefor. Its first few determinations recognized that Rosengart was sincerely opposed to all wars, but doubted the sincerity of his assertion that the claim had a religious base-a position now abandoned on appeal. In its later decisions, the board said, in effect, "he is not sincere, but if he is, the belief is sociological, philosophical, etc." To add to the confusion, the board's fourth decision, which was adopted by the last decision, in turn reaffirmed the first three decisions.
 
 II.
 
 60
 Even if I could shut my eyes to the merry-go-round that preceded this appeal, I nevertheless see no basis in fact to support the review board's determination that petitioner is not sincere.
 
 
 61
 It is well established that an interviewing officer's conclusion that an applicant is sincere must be given considerable weight. See, e. g., United States ex rel. Tobias v. Laird, 413 F.2d 936 (4th Cir. 1969). As Judge Smith recently stated:
 
 
 62
 "Yet if all three officers who had seen and heard petitioner (i. e., the psychiatrist and the chaplain who interviewed him and the hearing officer who observed him) had found petitioner sincere, the Army would have been hard pressed to justify its finding of insincerity."
 
 
 63
 United States ex rel. Donham v. Resor, 436 F.2d 751, 754 (2d Cir. 1971).
 
 
 64
 Rosengart convinced four Army officials of his sincerity, and three of them after the board had already expressed its disapproval. On the record before us, the following observation of Judge Wollenberg in a somewhat similar case seems appropriate:
 
 
 65
 "To allow an agency to use an isolated fact to override all other proofs advanced by the applicant, no matter how strong, would be to permit the caprice which the due process clause commands us to prevent. Dickinson v. United States, 346 U.S. 389, 74 S.Ct. 152, 98 L.Ed. 132 (1953). The 'basis in fact' required to uphold the agency finding must therefore vary in strength according to the persuasiveness of the prima facie case made by the applicant."
 
 
 66
 Shirer v. Hackel, 330 F.Supp. 369, 370 (N.D.Cal., Aug. 12, 1970); accord, Adams v. Davidson, 331 F.Supp. 612 (N.D.Cal., Oct. 30, 1970); United States ex rel. Armstrong v. Wheeler, 321 F.Supp. 471, 480 (E.D.Pa.1970).
 
 
 67
 It would seem that findings of sincerity made by interviewers of in-service conscientious objectors are entitled to special weight. First, the chaplain and hearing officer possess special skills in evaluating such applicants. Second, the chaplain, the psychiatrist, and the hearing officer are all Army personnel, and thus are not likely to be sympathetic to an applicant's opposition to war and the military. Silberberg v. Willis, 306 F.Supp. 1013 (D.Mass.1969); aff'd in pertinent part, 420 F.2d 662 (1st Cir. 1970). Third, several separate interviews are held and entirely independent opinions reached, unlike the one appearance and collective deliberation of the selective service local board.
 
 
 68
 Respondent has raised a battery of arguments to justify the review board's finding of insincerity. I find no merit to any of these claims.
 
 
 69
 The government first points out that Rosengart's participation in ROTC enabled him to attend law school. This overlooks the fact that Rosengart would have received a deferment for graduate study under the Selective Service regulations applicable at the time.
 
 
 70
 Respondent, as well as the review board in several of its decisions, argues that the lateness of Rosengart's application, coupled with his prior requests for medical discharge and hardship deferment, provide a basis in fact for doubting petitioner's sincerity. Lateness alone, however, is no basis for concluding that an individual's conscientious objection is feigned. United States v. Gearey, 368 F.2d 144 (2d Cir. 1968). As recently stated by the Seventh Circuit:
 
 
 71
 "Tardiness standing alone, however, carries slight weight in light of the subjectivity of the beliefs involved and the fact that aging, as well as external circumstances, may serve to crystallize sincere beliefs in a young man's mind long after his initial registration."
 
 
 72
 United States v. Joyce, 437 F.2d 740, 745 (7th Cir. 1971).
 
 
 73
 More important, it is settled that the mere fact that a belated conscientious objection application follows other requests for deferment or exemption does not in itself provide a basis for concluding that an individual is not sincere. Capobianco v. Laird, 424 F.2d 1304 (2d Cir. 1970). The reasons are many and persuasive. A request for other deferments is entirely consistent with late crystallization of conscientious objection. Additionally, it is quite common for a sincere individual with deeply felt beliefs against armies and war continually to reexamine his views to decide whether those beliefs rise to the level of a conscientious objection to war in any form, until necessity forces him to make that decision. Until that point is reached, this sincere individual may submit requests for other deferments to which he feels entitled, not only to avoid the stigma that may attach to a conscientious objector, but also in the hope that the ultimate introspective resolution of a matter of conscience may prove unnecessary. United States v. Rutherford, 437 F.2d 182 (8th Cir. 1971); United States v. Broyles, 423 F.2d 1299 (4th Cir. 1970); Bouthillette v. Commanding Officer, Newport Naval Base, 318 F.Supp. 1143 (D.R.I.1970); Silberberg v. Willis, 306 F.Supp. 1013 (D.Mass.1969), aff'd in pertinent part, 420 F.2d 662 (1st Cir. 1970).
 
 
 74
 In his application for discharge, Rosengart states that his participation in group therapy, when added to his developing humanist conviction, "has in the past year coalesced my belief that I am a conscientious objector." In its fourth decision, dated October 10, 1969, which was reaffirmed in its final decision, the review board refers to a letter from Rosengart which states: "These ideas have been formulating in my mind for many months." The board then adds: "Were this statement true, and in consideration of his own chronological description of the sociological events that allegedly led to his conscientious objector stand, he would not have awaited active duty orders to force his hand, or for two hardship applications to be processed and reviewed." Because this finding ignores the distinction between belief and conscientious objection, as discussed above, it is erroneous as a matter of law. There is no fact in the record which contradicts Rosengart's assertion that his convictions "coalesced" in the period immediately preceding his application.
 
 
 75
 Rosengart's requests for relief on medical and hardship grounds were plainly substantial. There is thus no basis for inferring that they were submitted only for purposes of delay, or that Rosengart was seeking to avoid his military obligations in any way he could (assuming that this fact would be sufficiently probative of an individual's lack of sincerity in seeking conscientious objection).[12] Regarding the medical request, it is undisputed that Rosengart was under psychiatric care, and had been attending psychotherapy sessions since March, 1966.[13] The hardship request was predicated upon the fact that Rosengart's mother had multiple sclerosis, and her condition was rapidly deteriorating during the spring of 1968. Petitioner's continued presence was deemed essential not only to supplement the family income, but also because of the salutary effect of Rosengart's continual visits in counteracting his mother's emotional depression.
 
 
 76
 The government also argues that a letter written by a Rabbi Goldberg in support of Rosengart's hardship request supports the board's determination.[14] It is true that the Rabbi wrote that Rosengart was "anxious and willing to do his duty for his country," but there is no indication that Rosengart and Rabbi Goldberg had remained intimate, or that the Rabbi had any knowledge of petitioner's latest views on war and the armed forces. Indeed, the record supports the contrary conclusion since it is undisputed that Rosengart gradually moved away from Judaism toward Quaker and humanist beliefs, and that he found certain teachings of his former faith to be vindictive and incompatible with concepts of peace and brotherhood.
 
 
 77
 Finally, I come to that alleged inconsistency which persuades the majority here that there is a factual basis for the board's action, even though (1) neither the review board nor the judge below ever mentions it in their many opportunities, (2) four Army interviewers attested to Rosengart's sincerity, and (3) the review board's stated reasons in all five decisions were erroneous. Having "undertaken our own independent search of the record," the majority concludes that Rosengart's second request for a hardship deferment is inconsistent with a statement in his later conscientious objection application, and therefore the board could find "that Rosengart as a matter of expedience had tailored his facts to fit the circumstances." I disagree.
 
 
 78
 On May 3, 1968, Rosengart's first request for a hardship deferment was denied. From August 1, 1967, until May 10, 1968, Rosengart worked as an attorney with a law firm. Commencing May 13, 1968, he was employed with Mobilization For Youth, an antipoverty organization he had worked for as a volunteer student law clerk during his entire last year of law school. This chronology reveals that when Rosengart returned to MFY as a staff attorney, his first hardship request had already been denied. Although a second hardship request was to be submitted, there was essentially no new information to be added so that denial was virtually certain. Accordingly, there is no reason to suppose that Rosengart's employment with MFY reflected more than a desire to return to work that interested him in the brief period prior to receipt of his active duty orders.
 
 
 79
 The supposed inconsistency between Rosengart's statements of June 3, 1968, and August 1, 1968, is superficial. The earlier letter does not state, as the majority believes, that Rosengart anticipated "remunerative association with a patent law firm," but merely says that he passed the Patent Office bar examination and will be able to contribute about $3,000 per year to his family income. This is not a distinction without substance, for Rosengart could supplement his family income when necessary by part-time patent work and still work with MFY.
 
 
 80
 Rosengart's August 1, 1969 statement that he intends to devote his career to public service work as a lawyer for poor people "at enormous sacrifice in earnings" is not inconsistent with the June 3 comment, nor does it merit the majority's sarcastic parenthetical that Rosengart impliedly intended to sacrifice his family's welfare as well. First, Rosengart clearly did not expect to be burdened with supporting his family for the rest of his life, so there is no inconsistency between his request for a temporary hardship delay and his intention to devote his life to public service.
 
 
 81
 Second, although Rosengart affirmed that he was working at a salary "equal to approximately 60%" of what he could earn in business law or industry, the record does not bear out the majority's facile assumption that he would be unable to contribute substantially to his family's income. Sixty percent may well be $9,000, and Rosengart was paying only $49.34 per month rent for an apartment in New York.
 
 
 82
 Third, Rosengart's June 3 remarks concerning income are only a subsidiary reason offered in support of his hardship request. The balance of that affidavit is devoted to how his frequent visits home, his ability to chauffeur his incapacitated mother, and the like were essential to her emotional well-being.
 
 
 83
 Fourth, as noted earlier, the March 19, 1969, review board agreed that Rosengart had made sacrifices for his beliefs. Whatever merit the argument that the interviewers did not have Rosengart's 201 file before them may have, the review board did study this file and nonetheless credited his "sacrifices." It seems inappropriate for this court to reexamine that finding.[15]
 
 
 84
 I therefore conclude that the ground advanced by the majority for its decision, like the other rationales advanced by respondent, is mere "suspicion and speculation [which] is both contrary to the spirit of the Act and foreign to our concepts of justice." Dickinson v. United States, 346 U.S. 389, 397, 74 S.Ct. 152, 158, 98 L.Ed. 132 (1953).
 
 
 85
 Oliver Rosengart is entitled to better treatment from the administrative and judicial processes than he has received. I would reverse with direction that petitioner be discharged forthwith from the armed forces.
 
 
 
 [1]
 This apparently was not the first time Rosengart attempted to avoid military service. Letters from his former roommate, submitted in support of Rosengart's application for a discharge as a conscientious objector, indicate that he sought to resign from ROTC while still at CCNY
 
 
 [2]
 Exhibits to Govt.Br. (AA) at AA8
 
 
 [3]
 AA9
 
 
 [4]
 Rosengart's City College transcript reflects that he was an average student with approximately the same number of predominantly B's and C's, and approximately the same small number of A's as D's. AA14. His high school average upon graduation was 90.8. Id. Rosengart is presently a teacher at the NYU Criminal Law Clinic, "hardly a haven for underachievers." Govt.Br. at 15
 
 
 [5]
 AA11
 
 
 [6]
 AA15
 
 
 [7]
 AA18; AA22
 
 
 [8]
 AA24
 
 
 [9]
 AA25
 
 
 [10]
 AA26
 In his letter dated May 28, 1968, Rabbi Jacob Goldberg stated the following:
 "I have known Oliver and his family for many years. I have watched this young man grow into young manhood, and know him to be of excellent moral character, anxious and willing to do his duty for his country but equally anxious and compelled to fulfill his moral obligations toward his mother."
 As will be seen infra, the Army concluded that it was possible that Rosengart was anxious to do neither.
 
 
 [11]
 AA27
 
 
 [12]
 AA29
 
 
 [13]
 Members of the Armed forces whose beliefs "crystallize" following entrance into military service may request discharge as CO's therefrom pursuant to Department of Defense Directive 1300.6 (DoD 1300.6). Appellant's Appendix (A) at A155 et seq. The specific Army Regulation under which Reserve members apply is AR 135-25. The standards for determining CO exemption-i. e., the bases for beliefs and sincerity with respect thereto-are identical to those of the Selective Service System. The DoD and AR regulations provide for separate examinations before three officers: a psychiatrist, a chaplain and a "hearing officer" of grade O-3 or higher, the last-mentioned of whom is to be "knowledgeable in policies and procedures relating to conscientious objector matters." DoD 1300.6, par. VI.B.4; AR 135-25, par. 7.a(3) (c). These regulations emphasize the importance of the hearing officer, in that he is the only one of the three officers in the CO personal examination process required to "enter his recommendation and the reasons therefor into the ["201" personnel] file," DoD 1300.6, par. VI.B.4(a); AR 135-25, par. 7.a(3) (c), after giving a CO applicant a hearing in support of his application and after making any independent inquiry which he deems appropriate. The application, supporting papers and recommendation are then "forwarded together with any other pertinent information known to the immediate command, to Departmental Headquarters for individual determination of action on the basis of facts and the special circumstances of the case." DoD 1300.6, par. VI.B.5
 
 
 [14]
 A25
 
 
 [15]
 A32
 
 
 [16]
 A33
 
 
 [17]
 A61-A73
 
 
 [18]
 The questions put to the Army by the district court were as follows:
 "1. Did the Conscientious Objector Review Board find that petitioner's opposition to war is not genuine or sincere on the basis of affirmative evidence in the 201 file going beyond mere disbelief?
 "2. Did the Conscientious Objector Review Board find that the interviewers failed to appraise the applicant on the basis of evidentiary data or find that they failed to apply the correct standards to the facts considered?
 "3. Did the Conscientious Objector Review Board construe the regulations to require proof that not only had petitioner's opposition to war matured after entry into military service but that religious training had occurred after entering military service?
 "4. Did the Conscientious Objector Review Board construe the application as one for a discharge from all further obligation and not to perform alternate service wherever he may be directed; [and the Board is to state what treatment should be accorded to petitioner if it should ultimately be held that he should be excused from active duty]?"
 A74-A75.
 
 
 [19]
 A68
 
 
 [20]
 A92
 
 
 [21]
 A107-A113
 
 
 [22]
 A116-A119
 
 
 [23]
 380 U.S. 163, 85 S.Ct. 850, 13 L.Ed.2d 733 (1965)
 
 
 [24]
 297 F.Supp. 902 (D.Mass.1969), appeal dismissed, 399 U.S. 267, 90 S.Ct. 2117, 26 L.Ed.2d 608 (June 29, 1970)
 
 
 [25]
 398 U.S. 333, 90 S.Ct. 1792, 26 L.Ed.2d 308 (1970)
 In Welsh the Supreme Court held that the Selective Service Act's CO provisions applied to "all those whose consciences, spurred by deeply held moral, ethical, or religious beliefs, would give them no rest or peace if they allowed themselves to become a part of an instrument of war." 398 U.S. at 344, 90 S.Ct. at 1798. The Court also held that the Act's CO provision applied to those beliefs which "occupy in the life of that individual [holding the above-recited beliefs] 'a place parallel to that filled by * * * God' in traditionally religious persons." 398 U.S. at 340, 90 S.Ct. at 1796.
 
 
 [26]
 A135
 
 
 [27]
 A139
 
 
 [28]
 A140
 
 
 [29]
 A149-A153
 
 
 [30]
 50 U.S.C. App. Sec. 456(j)
 
 
 [31]
 Cf. Witmer v. United States, 348 U.S. 375, 381-382, 75 S.Ct. 392, 99 L.Ed. 428 (1955); United States v. Abbott, 425 F.2d 910, 914-916 (8th Cir. 1970); Capobianco v. Laird, 424 F.2d 1304, 1306 (2d Cir. 1970)
 
 
 [32]
 Cf. United States v. Washington, 392 F.2d 37, 39 (6th Cir. 1968); United States v. Corliss, 280 F.2d 808, 814 (2d Cir. 1960), cert. denied, 364 U.S. 884, 81 S.Ct. 167, 5 L.Ed.2d 105 (1960)
 
 
 [33]
 United States v. Abbott, 425 F.2d 910, 913 n. 4 (8th Cir. 1970) and cases cited therein
 
 
 [34]
 436 F.2d 751, 754, (2d Cir. 1971)
 
 
 [35]
 See also United States ex rel. Tobias v. Laird, 413 F.2d 936, 937 (4th Cir. 1969); United States ex rel. Brooks v. Clifford, 409 F.2d 700, 705 (4th Cir. 1969)
 
 
 [36]
 Cf. United States v. St. Clair, 293 F.Supp. 337, 341 (S.D.N.Y.1968)
 
 
 [37]
 Rosengart argues that the district court, and the Government on appeal, have improperly relied upon facts not relied upon by the Army for its determination in denying him his CO discharge. See SEC v. Chenery Corp., 332 U.S. 194, 196, 67 S.Ct. 1575, 91 L.Ed. 1995 (1947). This contention would be correct only if the Army had relied exclusively upon the sources, as opposed to the sincerity, of Rosengart's belief, as the basis for its decision. It did not do so, and our decision therefore does not suffer from the infirmity suggested
 
 
 [38]
 Batterton v. United States, 260 F.2d 233, 237 (8th Cir. 1958)
 
 
 [39]
 AA28
 
 
 [40]
 A17
 A reading of the second hearing officer's report leaves little doubt that Capt. Koch's recommendation of sincere conscientious objection was based substantially on his belief in the substance of the above-quoted statement.
 
 
 [41]
 Cf. Kessler v. United States, 406 F.2d 151, 156 (5th Cir. 1969)
 
 
 [42]
 See Hammond v. Lenfast, 398 F.2d 705, 718 (2d Cir. 1968) (per curiam on rehearing) (remand to the Navy in the light of changed DoD regulations); cf. United States v. Gearey (I), 368 F.2d 144, 151 (2d Cir. 1966) (remand to Local Board to ascertain "precisely what [it] meant")
 
 
 [1]
 "I believe in the fundamental goodness of all men. I believe that, although some men may seem to act with malice toward their fellow men, these men believe their actions to be good and they act with apparent bad motive only because they are ignorant or afraid, not because they are inherently evil. I believe that all men on earth basically want to be kind and loving to their fellow men and that this inherent love and goodness in all men can be brought out by reaching out toward our fellow men with kindness and love. I believe in loving all men under all circumstances as a way of life
 "As a direct outgrowth of the beliefs stated in the preceding paragraph, I also believe in non-violence. I believe that violence employed by one man against another and violence employed by one society against another is fundamentally morally wrong, no matter what the circumstances. I believe that society can obtain the protection it needs by employing restraining force, which can and must be done without violence."
 
 
 [2]
 The Board also stated:
 "c. In reviewing the total of 1 LT Rosengart's official records, it is a fact that he has tendered several applications in an attempt to avoid further military service * * * Notwithstanding the apparent trend in this case, this request was considered on its own merits and unanimously found to be without qualification or basis for discharge as a conscientious objector."
 As will be seen infra, this "apparent trend" was transformed into a reason for denying Rosengart's discharge when Judge Pollack correctly concluded that other grounds advanced by the Board were invalid.
 
 
 [3]
 The majority states that the objective evidence which supposedly casts doubt on Rosengart's sincerity "in all probability was not available" to the interviewing officers. At best, this is only partially true. Captain Koch had before him Rosengart's supplementary statement explaining his reasons for submitting the medical and hardship deferment applications. Petitioner's attorney, who was present at the interview, deposed that Captain Koch read this statement and then questioned Rosengart about these prior requests. Affidavit of Joan Goldberg, August 29, 1969. The government never contested this assertion, and there is no transcript of the hearing before Captain Koch
 
 
 [4]
 It is not true, as the majority implies, that the recommendations of the chaplain and the psychiatrist may be disregarded freely because these officers were not required to give recommendations. DoD 1300.6, Sec. VI(B) (8) in effect at the time provided:
 "In each case, the Military Department concerned will:
 b. include a statement and report of a chaplain based upon an interview with the applicant, to include comments on the sincerity of the applicant in his belief and an opinion as to the source of the belief;
 c. include a statement by a psychiatrist, or by a medical officer when a psychiatrist is not available, based upon an interview with the applicant;"
 The most recent Army Regulation, effective August 15, 1970, after all but one of the determinations by the military in this case, now prohibits the chaplain and medical officer from recommending approval or disapproval, but the chaplain still must judge an applicant's sincerity and the source of his beliefs. AR 135-25(7) (b) (1), (2).
 
 
 [5]
 "a. His case is based on sociological experiences, a personal moral code, and philosophical beliefs. In accordance with paragraph 5b, AR 135-25, discharge applications based on these reasons will not be considered
 "b. The Board additionally questioned the sincerity and depth of his alleged religious convictions. His only reference to religious training was limited to childhood training in Judaism. This religious training obviously did not prevent him from entering military status. Further, he is not a practising Jew; but is currently associated with Quakers and Humanists in an unspecified vague manner. 1 LT Rosengart states that the religious training received prior to entering military status was the basis for his yet unmatured beliefs. Yet experiences that occurred after joining college ROTC were not religious in nature, but simply sociological experiences that no doubt influenced his personal moral code. The portion of his application where he endeavors to depict this maturing of conscientious objector beliefs was unanimously viewed as a crude attempt to align a weakness in his case with the regulatory requirements.
 "c. The letters of testimony submitted with his application do not establish any religious training subsequent to entering military status, but do support the Board's opinion that his case is based on a strong personal moral code that was influenced by sociological experiences.
 "d. In summary, 1 LT Rosengart was not considered a conscientious objector because his beliefs are founded solely on a personal moral code, philosophical views, sociological reasons, and the Board did not accept the sincerity of his stated convictions."
 
 
 [6]
 If it were true, as the government argues and the majority now holds, that "Rosengart as a matter of expedience had tailored his facts to fit the circumstances," I do not see how the two board members could have conceded that Rosengart made sacrifices for his beliefs
 
 
 [7]
 The board stated that the chaplain "correctly passed judgment on the sincerity of [Rosengart's] beliefs and rendered an opinion as to the source of his beliefs. The chaplain clearly indicated that a 'humanitarian attitude' more so than 'institutionalized religious belief' was the basis of his claim." The medical officer "included unsolicited remarks that helped categorize 1 LT Rosengart's claim as purely sociological experiences, a personal moral code, and philosophical beliefs."
 In view of the psychiatrist's statement that Rosengart "made a religion out of the importance of human life," I am completely unable to fathom the board's meaning, if any.
 
 
 [8]
 In this regard, the board should have consulted DoD 1300.6, Sec. V(C), which provides:
 "Evaluation of the sincerity of a claim of conscientious objection requires objective consideration of professed belief not generally shared by persons in the military service. For that reason, particular care must be exercised not to deny bona fide convictions solely on the basis that the professed belief is incompatible with one's own."
 
 
 [9]
 The board's problem appears to have been the fact that Rosengart believes in the use of restraining force in selfdefense. As has long been recognized, this is perfectly consistent with conscientious objection to war. Sicurella v. United States, 348 U.S. 385, 75 S.Ct. 59, 99 L.Ed. 640 (1955)
 
 
 [10]
 1. United States ex rel. Conrad v. Hoffman, 435 F.2d 273 (7th Cir. 970): Applicant sought discharge from the Army Reserve. The review board said application was founded on "philosophical views and a personal moral code," that they were "the philosophical views of an intelligent individual," were "poorly grounded in religious training and belief" and did not stem from "adult religious training that would have altered his conscience and values." The court held this erroneous under Seeger and Walsh, and then discounted a board finding that applicant was not "truthful or sincere in his stated religious beliefs" as reflecting the board's erroneous view that a traditional religious foundation for beliefs is required. Writ granted
 
 
 [2]
 United States ex rel. Armstrong v. Wheeler, 321 F.Supp. 471 (E.D.Pa. 1970): Despite findings of sincerity by a chaplain, psychiatrist, and lieutenant colonel, the review board rejected a reservist's application for discharge as follows:
 "The Board unanimously believed that LT Armstrong's alleged conscientious objector beliefs are not truly held; are not grounded in religious training and belief; and any objection to war in any form he might truly hold is based solely on sociological experiences, philosophical views and a personal moral code."
 The court, after expressing doubt as to whether the board truly held that petitioner's beliefs were not sincere, found no facts in the record to support the board, and granted the writ.
 
 
 [3]
 Decker v. Wheeler, 331 F.Supp. 347 (D.Minn., Sept. 10, 1970): Two of the three who interviewed petitioner found him to be sincere, but the review board at Fort Benjamin Harrison denied discharge. The board stated: (1) "LT Decker's alleged conscientious objector beliefs are not truly held"; (2) "are not grounded in religious training and belief"; (3) "Any objection to war in any form he might truly hold is based solely on sociological experiences, philosophical views, a personal moral code, and objection to the current conflict in Vietnam"; (4) "LT Decker [is] an opportunist who is attempting to use the machinery of conscientious objection to avoid fulfilling his military obligation." Held, no basis in fact for these findings; writ granted
 
 
 [4]
 Weber v. Inacker, 317 F.Supp. 651 (E.D.Pa.1970): A chaplain and a major found petitioner sincere, but the review board stated:
 "The board unanimously believed that PVT Weber's alleged conscientious objector beliefs are not truly held; are not well grounded in religious training and belief; and any objection to war in any form he might truly hold is based solely on a personal moral code and philosophical reasons."
 "In summary, the Board believes that PVT Weber is an intelligent opportunist attempting to gain discharge from his voluntarily incurred military obligation under the guise of conscientious objection; and any objection to war in any form he might truly hold is based on grounds other than religious training and proven religious belief."
 The court noted the board's vacillation, queried whether it found petitioner insincere, held that there was no basis in fact, and granted the writ.
 
 
 [5]
 Silberberg v. Willis, 306 F.Supp. 1013 (D.Mass.1969), aff'd in pertinent part, 420 F.2d 662 (1st Cir. 1970): All interviewers found petitioner to be sincere, but the review board at Fort Benjamin Harrison:
 "believed that his application was founded on philosophical views and a personal moral code * * * Furthermore, the Board doubted the sincerity of his alleged beliefs and believed his application to be poorly grounded in religious training and belief * * * Further, the Board was unimpressed with the sincerity of the applicant, and unanimously find that his beliefs are not truly held."
 Judge Wyzanski stated "Indeed, the Board's opinion gives the impression of being composed of cliches regularly used-what lawyers sometimes call 'boiler plate."' He found no basis in fact for the board's action, and granted the writ.
 
 
 [11]
 The new AR 135-25 provides that the applicant be given "reasons" for denial. Presumably no substantive change was intended
 
 
 [12]
 As stated in note 3, supra, Captain Koch knew of Rosengart's medical and hardship requests and the grounds asserted in support thereof. He nevertheless found petitioner to be sincere
 
 
 [13]
 Respondent's contentions that insincerity is shown by the fact that Rosengart stated on his medical form that he was a "chronic underachiever" and that he got "an occasional 24 hour stomach virus" are frivolous. Rosengart was far too intelligent to think that he might be excused from military service on either of these grounds. The humorous touch to these statements, particularly the latter in response to the question "have you treated yourself for illnesses other than minor colds," is readily perceived. Furthermore, there is no evidence that Rosengart's "chronic underachiever" remark is false. "Underachievement" and "overachievement" are relative concepts dependent on the specific individual's innate intelligence and ability. Thus, Rosengart's attendance at City College (with rather mediocre grades) and New York University Law School, and his present employment with the New York University Criminal Law Clinic, are irrelevant
 
 
 [14]
 This was the only reason stated by Judge Pollack for doubting Rosengart's sincerity. Although the district judge stated this reason in his first opinion, dated May 13, 1969, the board never referred to this letter even though it described in detail Rosengart's efforts to delay active duty
 
 
 [15]
 Since it appears that Captain Koch questioned Rosengart concerning his hardship request, and he could evaluate petitioner's demeanor, the majority's "discovery" is especially inappropriate. See Gresham v. Franklin, 315 F.Supp. 850, 853 (N.D.Cal.1970)